773 F.2d 1182
 39 Fair Empl.Prac.Cas. 53, 38 Empl. Prac.
Dec. P 35,658,
3 Fed.R.Serv.3d 62, 27 Ed. Law Rep. 740
 Claire H. SULLIVAN, Plaintiff-Appellant,
v.
SCHOOL BOARD OF PINELLAS COUNTY and Gus Sakkis,
Superintendent of Schools; Jerry Catellanos, Betty L.
Hamilton, Calvin A. Hunsinger, Martha Rudy Wallace, and
Gareth R. Whitehurst, Defendants-Appellees.
 No. 84-3388.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 15, 1985.
 
 George K. Rahdert, Steven H. Malone, Patricia F. Anderson, St. Petersburg, Fla., for plaintiff-appellant.
 B. Edwin Johnson, Clearwater, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HILL and ANDERSON, Circuit Judges, and GARZA,* Senior Circuit Judge.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 Appellant/plaintiff Claire Sullivan, a Jewish female, filed suit under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. Sec. 1983 against appellees/defendants, Pinellas County School Board, its board members, and the Superintendent of Schools, alleging that she was unlawfully discharged from her position as assistant superintendent of the school district. Appellant's theory of recovery with respect to Title VII was, essentially, that she was dismissed because of the sexist and anti-semitic attitudes of her coworkers, who because of these attitudes were hostile to her and complained about her job performance to her superiors. With respect to section 1983, her theory of recovery was that she was discharged without the process that was constitutionally due to her. She sought as relief reinstatement, backpay, and reimbursement for "other lost professional benefits."
 
 
 2
 The district court, following a nine day bench trial, found for appellees/defendants on both claims. The court also sua sponte found appellant's claims frivolous and invited appellees to petition for an award of attorneys' fees. Appellant appeals the district court's order, both with regard to the merits of her case and the finding of frivolity. We affirm the district court's judgment, except for its finding of frivolity. That portion of the judgment is reversed.
 
 FACTS
 
 3
 Appellant Claire Sullivan was hired as the Pinellas County School District's first female assistant superintendent in 1974. She was hired by Dr. Sakkis, the School District's Superintendent, without the usual administrative interview process, presumably because of his personal confidence in appellant's professional skills. John Blank, appellant's immediate supervisor, was involved only peripherally, if at all, in the process leading to appellant's employment.
 
 
 4
 Appellant's primary duty was to coordinate a "decision-making matrix" among the district's secondary school principals. Under this "decision-making matrix" system, school principals were jointly to make decisions about and have input into policy matters, rather than simply to implement the policy decisions of their superiors. The "decision-making matrix" system was a part of the new administrative structure of the school system organized by Dr. Sakkis in 1974. The previous administrative structure was based upon a "line/staff hierarchy," where all decisions came from the top and went through to the bottom. Prior to the change, supervisors for secondary and elementary education had direct line authority over the schools and their principals. Under the new system, assistant superintendents such as Ms. Sullivan did not have any direct authority over the principals. Instead, they were to use their organizational and political skills to help principals reach a consensus on issues of policy. In particular, Ms. Sullivan was responsible for helping secondary school principals develop the curriculum and instructional programs to be implemented in their schools.
 
 
 5
 According to appellees, appellant was initially well received by her coworkers; according to appellant, her coworkers, most of whom were male, were predisposed toward disliking appellant because she was a woman and Jewish. In any event, it is undisputed that appellant's tenure was less than smooth. She had a great deal of difficulty getting along with her immediate supervisor Mr. Blank. Appellant resented Blank's calling her "Dolly Levy" and "Sarah Bernhardt," terms which appellant viewed as anti-semitic. Appellant also felt that Mr. Blank had turned the principals against her. Because of these problems, appellant often took her concerns over Mr. Blank's head either to the superintendent or to Mr. Whitehurst, a school board member who was a friend of appellant. In spite of appellant's complaints, her relationship with Mr. Blank did not improve.
 
 
 6
 Appellant's relationship with the principals also was stormy. A number of complaints from the principals about appellant's demeanor were received. Eventually, in January or February, 1979, the principals complained en masse to the superintendent that they could no longer work with appellant.
 
 
 7
 In late February 1979, the superintendent informed appellant that he would not recommend her for reappointment the following year. According to appellees, she was not renewed because she was adversarial and unable to get along with and earn the respect of her coworkers. According to appellant, her problems with her coworkers were due to their sexist and anti-semitic attitudes, and it was these discriminatory attitudes that led to the termination of her employment.
 
 
 8
 Shortly after the superintendent informed appellant that he could not recommend her renewal, some discussion ensued that appellant be allowed to resign. Appellant ultimately rejected this option, because it would have made her ineligible for unemployment compensation. Appellant then publicly announced that she would not be returning to work the following year. Having done so, appellant, in mid-March 1979, sought a full, written explanation from the superintendent as to why she would not be rehired. Eventually, in April 1979, this explanation was presented to the school board. In spite of an attempt by school board member Whitehurst to raise the issue of appellant's termination, the issue was tabled and never fully aired before the board.
 
 DISCUSSION
 I. Title VII Claim
 
 9
 Appellant argues that the district court's finding of no discrimination is clearly erroneous. We disagree. Appellees introduced an overwhelming amount of evidence indicating that appellant's difficulties with her coworkers and her subsequent discharge were not on account of her sex or religion, but because she was adversarial and a difficult person with whom to work. Recounting only a portion of the evidence produced by appellees, we note that their evidence indicated that throughout her time with the school board coworkers, including women, had complained about her work habits and demeanor, and that her difficulty in getting along with her coworkers had been noted on her performance evaluation. Dr. Sakkis testified that the en masse complaints of the principals regarding Ms. Sullivan's performance, particularly her adversarial nature and inability to get along with the principals, was the "final straw." Testimony at trial indicated that these en masse complaints included allegations that Ms. Sullivan: (1) used teacher allocation to schools as a threat; (2) blamed others for problems; (3) insulted principals by calling them "jocks," (4) was frequently not available, cancelled meetings, and failed to attend some scheduled meetings; (5) did not comprehend the problems the principals faced; (6) could not properly run or manage meetings of the principals; (7) was often in an adversarial position with the principals.
 
 II. Procedural Due Process Claims
 
 10
 Appellant also argues that the district court erred in holding that appellant had been denied procedural due process. Appellant claimed she was denied all the process due her because she was not given notice of the reasons for her termination or the opportunity to have a hearing. We need not reach the issue of whether Ms. Sullivan received sufficient process, since we hold that Ms. Sullivan, a nontenured employee of the school district, had neither a protected property interest nor a protected liberty interest in continued employment. Absent such an interest, she was not entitled to any process at all. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
 
 
 11
 To have a constitutionally protected property interest in continued employment, a nontenured school district employee "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. at 2709. Such an interest generally may be created by law or through some mutually explicit understanding between the parties. Id.; Perry v. Sindermann, 408 U.S. 593, 600-02, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972).
 
 
 12
 Florida law does not create a protected property interest for employees in Ms. Sullivan's position, which was a nontenured, noncertified, noninstructional year-to-year position subject to an annual "Notice of Appointment." The rules applicable to such employees are found in School Board Policy 6GX52-6.05[1] and Fla.Stat. Sec. 230.23(5)(b) (1979).[2] Under these authorities, if Ms. Sullivan had any protected property interest in continued employment, it attached only when the Superintendent recommended her appointment. Superintendent Sakkis did not recommend her appointment in 1979.
 
 
 13
 Nor do we find that there was any mutually explicit understanding between the parties sufficient to create a protected property interest in continued employment. Despite Ms. Sullivan's argument to the contrary, we do not find School Board Policy 6GX52-6.03[3] to mandate that her performance evaluation be the determining factor in deciding whether to retain her, thus creating a protected property interest in her employment continuing unless she received an unsatisfactory evaluation. Nothing in this policy indicates that an employee may not be recommended for continuation for other reasons besides a poor evaluation. Nor does the plain language of the policy require that an employee receiving a poor evaluation not be recommended.
 
 
 14
 Further we do not find any of the evidence introduced at trial, including any comments Dr. Sakkis may have made to Ms. Sullivan regarding her continued employment, to be sufficient to establish the kind of "mutually explicit understanding" between the parties contemplated by Perry v. Sindermann, 408 U.S. at 600-02, 92 S.Ct. at 2699-2700.
 
 
 15
 In addition to maintaining that her discharge implicated a protected property interest, appellant claims the actions and statements of appellees accompanying and following her nonrenewal impaired her protected liberty interests. The record does not support this argument. In Board of Regents v. Roth, 408 U.S. at 573, 92 S.Ct. at 2707 (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)), the Supreme Court found two situations in which dismissal of or refusal to rehire even a nontenured employee triggered due process rights: " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him ...' " and where the state employer imposes "a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities." In Clemons v. Dougherty County, Georgia, 684 F.2d 1365, 1371 (11th Cir.1982) (quoting Dennis v. S & S Consolidated Rural High School District, 577 F.2d 338, 342-43 (5th Cir.1978)), this court reiterated the standard for proving a deprivation of a liberty interest, stating that a claimant must "establish that his termination was attended by stigmatizing charges which 'might seriously damage his standing and associations in his community' or foreclose 'his freedom to take advantage of other employment opportunities.' "
 
 
 16
 Ms. Sullivan and the school board were provided in writing the reasons for her nonrenewal, which were, essentially, that she was unable to perform her job because she was adversarial and unable to get along with and gain the respect of her coworkers. Under Florida law, these written reasons presented to Ms. Sullivan and the school board became public record under Fla.Stat. Sec. 119.07 (1979).
 
 
 17
 Initially, we note that the written presentation of the reasons for her discharge was provided at the insistence of Ms. Sullivan herself. The record shows that she publicly announced her nonrenewal, brought her nonrenewal to the attention of the media, demanded a written statement of the reasons for her nonrenewal, and instigated the written presentation to the school board and thus to the public. This is not the case of a government employer gratuitously making charges or allegations against an employee. Here, the employee herself requested that the reasons for her nonrenewal be articulated and aired.
 
 
 18
 Further, the reasons given for Ms. Sullivan's nonrenewal do not implicate a liberty interest. Without suggesting that to implicate a liberty interest the charge or allegation must involve dishonesty or immorality, see Clemons, 684 F.2d at 1371-73, we do not find the comments regarding Ms. Sullivan's nonrenewal to be comments that place "a person's good name, reputation, honor, or integrity ... at stake" or that foreclose Ms. Sullivan's "freedom to take advantage of other employment opportunities."
 
 III. Demand for Jury Trial
 
 19
 Appellant further argues that the district court erred in denying appellant's belated demand for a jury trial. Appellant filed this lawsuit in August 1980. Over two years later in October 1982, she requested a jury trial for the first time. The court denied the request because the time for trial was too near. When the case was then continued, appellant again requested a jury trial. The motion was again denied, this time on the ground that appellant sought only equitable relief.
 
 
 20
 The district court was correct in holding that appellant's claims were equitable and therefore not the proper subject of a jury trial. Appellant seeks reinstatement, backpay and reimbursement for "other lost professional benefits," all of which are equitable whether sought under Title VII or section 1983. Harkless v. Sweeny Independent School District, 427 F.2d 319, 323-24 (5th Cir.1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125 (5th Cir.1969).[4]
 
 
 21
 Further, Federal Rule of Civil Procedure 38(b) requires that a demand for a jury trial be made no later than ten days after the service of the last pleading directed to the issues for trial. It is undisputed that appellant made no such demand until about two years after the last pleading was served. Accordingly, appellant is entitled to a jury trial only if she meets the five-factor balancing test outlined in Parrott v. Wilson, 707 F.2d 1262, 1267 (11th Cir.1983). The Parrott tests involves a balancing of: (1) whether the case involves issues best tried to a jury; (2) whether granting the motion for a jury trial would disrupt the court's or adverse parties' schedule; (3) how greatly adverse parties will be prejudiced; (4) how long the movant had delayed in requesting the jury trial; and (5) why the movant had not made a timely request for a jury trial. Appellant's application for a jury trial was very late, thus likely to disrupt the court's schedule and cause great prejudice. Further, appellant gave no reason for the delay. See id. at 1268 ("appellant has nowhere stated the reasons for her failure to request a trial by jury within the time provided in Rule 38(b).... [W]e therefore will not reverse the trial court's ruling [denying appellant's untimely request for a jury trial]"). In view of these considerations, the district court did not err by denying appellant a jury trial.
 
 IV. Frivolous Claims
 
 22
 Finally, appellant attacks the district court's sua sponte finding of frivolity, and its invitation to defendants to seek attorney's fees. This attack raises the most difficult issue for us to decide on this appeal; for the record in this case makes it abundantly clear that the district court committed no error in determining the merits.
 
 
 23
 The district court apparently found both the Title VII claim and the section 1983 due process claim to be frivolous. Particularly in view of the clear preponderance of the evidence in favor of the appellees/defendants in the Title VII claim, we can understand the court's inclination to find that claim frivolous. However, we must appraise the award of attorneys' fees against the standards established in Hughes v. Rowe, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), and the cases applying those standards. Measured against these standards, the finding of frivolity regarding either claim cannot stand.
 
 
 24
 Under Hughes v. Rowe, 449 U.S. at 14-15, 101 S.Ct. at 178-179 and Christiansburg Garment Co. v. E.E.O.C., 434 U.S. at 421, 98 S.Ct. at 700, a district court may in its discretion award attorneys' fees to a prevailing defendant in a Title VII or section 1983 action upon a finding that the plaintiff's lawsuit was "frivolous, unreasonable, or without foundation." The Supreme Court has instructed that:
 
 
 25
 In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.
 
 
 26
 Id. at 421-22, 98 S.Ct. at 700-01. In determining whether a suit is frivolous, "a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." Jones v. Texas Tech University, 656 F.2d 1137, 1145 (5th Cir.1981).
 
 
 27
 Cases where findings of "frivolity" have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a Fed.R.Civ.P. 41(b) motion for involuntary dismissal. In these cases, the plaintiffs did not introduce any evidence to support their claims. E.g., Beard v. Annis, 730 F.2d 741 (11th Cir.1984); Jones v. Dealers Tractor and Equipment Co., 634 F.2d 180 (5th Cir.1981); Church of Scientology of California v. Cazares, 638 F.2d 1272 (5th Cir.1981); Harris v. Plastics Manufacturing Co., 617 F.2d 438 (5th Cir.1980). In cases where the plaintiffs introduced evidence sufficient to support their claims, findings of frivolity typically do not stand. E.g., White v. South Park Independent School District, 693 F.2d 1163 (5th Cir.1982); Plemer v. Parsons-Gilbane, 713 F.2d 1127 (5th Cir.1983).
 
 
 28
 Factors considered important in determining whether a claim is frivolous also include: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. See, e.g., E.E.O.C. v. Kimbrough Investment Co., 703 F.2d 98, 103 (5th Cir.1983); Jones, 656 F.2d at 1146. While these general guidelines can be discerned from the case law, they are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis.
 
 
 29
 Applying these standards to the particular facts of appellant's case, we note intially that appellees' Rule 41(b) motion for involuntary dismissal was denied, the appellees never filed a motion for summary judgment and a nine-day trial was held. While we do not hold, or suggest, that a finding of frivolity cannot be sustained if the case has gone to trial, this is, as noted above, a factor to be considered.
 
 
 30
 Turning to the merits of appellant's Title VII claims, we find that, while it is abundantly clear that the trial court's decision on the merits is supported by the record, it cannot be said that an objective examiner would find her claim so patently devoid of merit as to be "frivolous." As the trial court found, appellant established a prima facie case of employment discrimination. She also introduced evidence that virtually all of the principals with whom she worked were male and that she was the first woman to hold this job. An affirmative action officer testified that the school board was underutilizing females in Ms. Sullivan's job classification at the time of her termination. There was also evidence that Ms. Sullivan's last performance evaluation prior to her nonrenewal noted an improvement in the way she got along with her coworkers. A school board member testified, refuting many of the allegations made against Ms. Sullivan. Ms. Sullivan also disputed the principal's complaints.
 
 
 31
 In addition to refuting the validity of the complaints against her, appellant also introduced evidence of allegedly ethnic slurs and sexist comments made by Mr. Blank and at least one principal. Although the district court stated that appellant proffered evidence of only one such comment, the record evidences that Ms. Sullivan testified that Mr. Blank referred to her as Dolly Levy (the matchmaker in "Hello Dolly") and Sarah Bernhardt, the Jewish actress; that he said he chose a "New York" or "Jewish" deli for lunch because he thought Ms. Sullivan "would approve"; that he said to her at lunch, "you're not going to get ham are you?"; that he said he could not work with women; and that he commented to another employee in reference to Ms. Sullivan that he did not like "women that wear white stockings." There was also evidence that Mr. Blank opposed allowing women to become members of Phi Delta Kappa, an organization of professional educators to which he belonged, and that when Ms. Sullivan was allowed to join Mr. Blank stopped attending Phi Delta Kappa meetings.
 
 
 32
 There was also testimony that one of the principals, Gerald Luther, bragged to other school district employees that at one meeting of secondary school principals chaired by Ms. Sullivan they "had gotten to her and made her cry." Gerald Luther allegedly also said something to the effect of, "if she couldn't play with the big boys, she shouldn't be in the league."
 
 
 33
 Appellant, primarily through her own testimony, thus offered evidence that none of the complaints against her were justified and that her supervisor and at least one principal had expressly made comments that could be taken as sexist and anti-semitic. This evidence if believed would be sufficient evidence from which a trier of fact could have reasonably inferred that her problems with her coworkers and her subsequent termination were the result of her male coworkers' sexist and anti-semitic attitudes rather than their legitimate complaints about her performance. Of course, the district court was not required to believe her testimony or to adopt this inference, especially in light of all the evidence to the contrary introduced by the appellees. However, unless the district court found all of her testimony to be absolutely incredible and pure fabrication, its finding of frivolity cannot be sustained. The district court gave no express indication, either at trial or in its written opinion, that it found her testimony to be pure fabrication.
 
 
 34
 Upon a review of the record and applicable law, we are also convinced that appellant's due process claims were not so unreasonable or groundless as to be frivolous.
 
 
 35
 We do not mean to suggest that claims such as Ms. Sullivan's may never be found frivolous, or to establish any general rule based on the peculiar facts of this case. Findings regarding frivolity should, as noted above, be based on a case-by-case basis. We hold only that, under the particular facts of this case, Ms. Sullivan's claims could not be found to be frivolous.
 
 CONCLUSION
 
 36
 For the foregoing reasons, the judgment of the district court is AFFIRMED, except insofar as it finds appellant's claims to be frivolous. That portion of the opinion is REVERSED.
 
 
 37
 Appellees' motion for the award of attorney's fees on this appeal, carried with the case, is DENIED.
 
 
 38
 AFFIRMED in part; REVERSED in part.
 
 
 
 *
 Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 School Board Policy 6GX52-6.05 provides in relevant part:
 (3) Notification of Appointment: Personnel (employed) at the assistant superintendent level and above ... who are not required to hold certificates shall be issued annual notifications of appointment in lieu of contracts.
 
 
 [2]
 Fla.Stat. Sec. 230.23(5)(b) (1979) provides, in relevant part:
 The school board, acting as a board, shall exercise all powers and perform all duties listed below.
 ....
 (5) PERSONNEL.--Designate positions to be filled, prescribe qualifications for those positions, and provide for the appointment, compensation, promotion, suspension, and dismissal of employees as follows....
 ....
 (b) Appointment of noninstructional personnel. Act on the written recommendations submitted by the superintendent of persons to act as administrative, supervisory, technical, attendance or health assistants, school food service personnel, bus drivers, and all other noninstructional personnel and appoint persons to fill such positions. The term 'Act on the written recommendations' shall be interpreted to mean that the school board must consider the recommendations or nominations of the superintendent submitted as prescribed by law and may not reject such recommendations or nominations except for good cause....
 
 
 [3]
 6GX52-6.03 provides, in relevant part:
 6GX52-6.03 ASSESSMENT OF INSTRUCTIONAL, ADMINISTRATIVE AND SUPERVISORY PERSONNEL
 (1) It is the intention of the Board that personnel assessment be a means of determining the suitability of probationary personnel who are being considered for reemployment and the retention of continuing contract personnel.
 (2) An assessment of the performance duties and responsibilities of all instructional, administrative and supervisory personnel shall be made each year. The essential reason for such assessment is improvement, insofar as possible for each member of the staff. It is the desire of the Board that any weaknesses in personnel shall be corrected subsequent to such assessment....
 (3) The Superintendent and the Board shall use the assessment for the purpose of improving education and reviewing contractual status.
 (4) The assessment file of each employee shall be open to inspection only by the Board, the Superintendent, the principal or supervisor, the employee, and such other persons as the employee and the superintendent shall authorize in writing.
 (5) Any employee failing to meet standards expected by the Board and thus receiving an unsatisfactory assessment may not be recommended for continuation as a member of the professional staff.
 
 
 [4]
 Although Harkless and Johnson involve only requests for reinstatement and backpay, the reasons given for deciding back pay is equitable relief are applicable to the "other lost professional benefits" sought by appellant. In Harkless, for example, the court states,
 Section 1983 was designed to provide a comprehensive remedy for the deprivation of federal constitutional and statutory rights. The prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement. Reinstatement involves a return of the plaintiffs to the positions they held before the alleged unconstitutional failure to renew their contracts. An inextricable part of the restoration to prior status is the payment of back wages properly owing to the plaintiffs, diminished by their earnings, if any, in the interim. Back pay is merely an element of the equitable remedy of reinstatement.
 427 F.2d at 324. See also Johnson, 417 F.2d at 1125 ("The demand for back pay is not in the nature of a claim for damages, but rather is an integral part of the statutory equitable remedy, to be determined through the exercise of the court's discretion, and not by a jury").