Kathryn J. GUTZWILLER, Plaintiff,

v.

Bernard C. FENIK, et al., Defendants.

Civ. No. C–1–84–1834.

United States District Court,
S.D. Ohio, W.D.

July 21, 1986.

Eric Holzapfel, Cincinnati, Ohio, for plaintiff.

Kenneth Faller, Donetta Weithe, Cincinnati, Ohio, for defendants.

### FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, Chief Judge.

This matter is before the Court following trial and the presentation of evidence and testimony for a period of twelve trial days. Asserted violations of 42 U.S.C. § 1983 were heard by a jury. Causes of action arising out of an alleged violation of 42 U.S.C. § 2000e *et seq.* and 20 U.S.C. § 1681 *et seq.* were reserved for disposition by the Court. Plaintiff asserts that she was denied tenure at the University of Cincinnati because of her sex. In accordance with Rule 52, Fed.R.Civ.P., the Court does submit its Findings of Fact, Opinion and Conclusions of Law.

### I.

### FINDINGS OF FACT

1. Plaintiff Kathryn Gutzwiller was hired by the University of Cincinnati in 1978 as an Assistant Professor in the Classics Department. She was placed upon what is known as a "tenure track". Her initial two year contract was renewed for two years in 1980 and again renewed for two years in 1982. In 1984 she was considered by the Classics Department for "tenure". At the same time Ann Michelini who had likewise been hired on a tenure tract in 1978 was also considered for tenure.

2. It was the custom in the Classics Department that tenure be considered by a Reappointment, Promotion and Tenure Committee (RPT Committee) composed of all tenured members of the Department with the exception of the department chairman. The RPT Committee involved herein was composed of Bernard Fenik, Gisela Walberg, Gerald Cadagon, Archie Christopherson and Michael Sage. Excluded from that committee by his position was defendant Getzel Cohen, head of the department. The RPT Committee voted unanimously to deny Professor Gutzwiller tenure while at the same time granting tenure to Professor Michelini.

3. The recommendation of the RPT Committee and a separate recommendation by Professor Cohen likewise denying tenure were then forwarded to William Dember, Dean of the College of Arts and Sciences. Dean Dember disagreed and recommended that tenure be granted. The issue was then referred to Joseph Steger, Provost of the University of Cincinnati, who concurred in the recommendation of the RPT Committee and disagreed with the recommendation of Dean Dember. From the Provost, the matter went to the then President of the University, Dr. Henry Winkler, who likewise concurred in the recommendation that Professor Gutzwiller be denied tenure.

As part of his inquiry, Dr. Winkler sought the assistance of Dean Gordon Christensen of the University of Cincinnati College of Law. Dean Christensen was requested to make an independent inquiry into the proceedings and to advise whether or not in his opinion there was evidence of sex discrimination. A comprehensive and detailed report was submitted with the conclusion that the rejection was not a matter of sex discrimination. While the Court con-

siders that the finding of the report is not admissible in evidence, the fact of its existence is probative in terms of the involvement of Dr. Steger.

4. Of the nine persons involved in the entire chain of proceedings only William Dember concluded that Professor Gutzwiller should receive tenure. But even Dean Dember conceded that the question was a close one. His specific response is illuminative. He stated: "I would interpret the information on her scholarship as being—I interpreted as revealing *somebody who had marginally met her Department criteria, not obviously, but marginally.* (emphasis added) (T.R. 548)

5. Evidence was presented to the Court that the Classics Department of the University of Cincinnati is one of the strongest in the nation. It seeks to attract outstanding scholars to tenured positions. Professor Gutzwiller while a competent and adequate scholar did not meet the high standards of the individual members of the RPT Committee.

## II.

## OPINION

■ Among the most difficult questions faced by District Judges is the determination of "discrimination". It is a concept that while easy to define, may be exceptionally difficult to ascertain in a specific situation. It requires an examination into the mental processes of those who are deemed to have discriminated. It is equally true that while Kathryn Gutzwiller may not be denied tenure only because she is female, neither may she be granted tenure only because she is female. The purpose of the Civil Rights Act of 1964 is to give all persons equal access to the job market. It does not, however, guarantee a job to every person regardless of qualifications. *Griggs v. Duke Power Co.,* 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

Critical to this case, therefore, is the question of Plaintiff's scholarship. It is beyond question that deficient scholarship

is a legitimate nondiscriminatory reason for denying a faculty member tenure. *Langland v. Vanderbilt University,* 589 F.Supp. 995 (1984), *aff'd,* 772 F.2d 907 (6th Cir. Opinion Unpublished 1985); *Lynn v. Regents of the University of California,* 656 F.2d 1337, 1344 (9th Cir.1981) *cert. denied,* 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982).

By definition the determination of another person's scholarship is a subjective one. It cannot be determined statistically or numerically. It can only be determined by those who are experts in the field. It was the unanimous decision of the Classics Department that Professor Gutzwiller's scholarship was insufficient. William Dember, Dean of the College of Arts and Sciences who disagreed, is not a classicist, nor a member of any discipline that is reasonably close. Dean Dember is by education and training a psychologist. But even without appropriate expertise he recognized the question to be a close one. (See Finding of Fact 4).

The legal decision as opposed to the academic decision is slightly less difficult. At least the standards are arguably more precise. There are discernable and different obligations on each side. The United States Court of Appeals for the Sixth Circuit has considered this problem and pointed out that "after the plaintiff has established a *prima facie* case the defendant assumes the burden of *producing* (as distinct from *proving*) a legitimate nondiscriminatory reason for its action." *Miller v. W.F.L.I. Radio Inc.,* 687 F.2d 136 (6th Cir.1982) (emphasis in original). Throughout the case the plaintiff retains her "continuing burden of *proof*" that the defendant discriminated against her. *Id.* at 138. (emphasis in original) Cited in *Brooks v. Ashtabula County Welfare Department* 717 F.2d 263 (6th Cir.1983).

In *Brooks* the Appellate Court was critical of the District Court because "the court effectively required the defendants not only to *produce* a legitimate reason for their actions, but also to *prove* that this

reason in fact motivated Kroen." *Brooks* at 267 (emphasis in original).

 The burden of production as against the burden of proof in this case may be difficult. The distinction has been drawn and is binding on this Court. The Plaintiff must "prove": the Defendants need only "produce". Accordingly, the Court determines that Plaintiff has not proved appropriate scholarship and that Defendants have produced a legitimate nondiscriminatory reason for the denial of tenure. The Court notes that support for Defendants position may be found in the fact that one member of the department who voted to deny tenure is a woman and that at the same time the department voted to grant tenure to another woman.

The Court was impressed by the testimony of Dr. Fenik who explained with clarity and conviction his zeal for scholarship and the manner in which Plaintiff was deficient.

 A distinction must be drawn in this matter between the cause of action brought pursuant to 42 U.S.C. § 1983 and the cause of action brought under 42 U.S.C. § 2000e *et seq,* familiarly known as Title VII of the Civil Rights Act of 1964. Although a jury has determined that the Plaintiff prevailed on her § 1983 claims, that determination is not binding on this Court. Title VII cases are matters of equity and there is no right to a jury trial. *Wilson v. City of Aliceville,* 779 F.2d 631 (11th Cir.1986); *Sullivan v. School Board of Pinellas County,* 773 F.2d 1182 (11th Cir.1985); *Harkless v. Sweeny Independent School District,* 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971). When a trial court sits with the aid of a jury in a Title VII case, the jury is advisory only unless both parties consent to make the jury's verdict binding. *Wilson supra* at 635. In this instance there was no such agreement.

It is an axiom of the law that situations may arise where "reasonable minds may reasonably differ". This is one of those situations.

Upon viewing the evidence in its entirety, the Court concludes that Plaintiff has not established by a preponderance of the evidence that she is entitled to equitable relief in this matter. Accordingly, the cause of action brought in accordance with 42 U.S.C. § 2000e *et seq.* is hereby dismissed at Plaintiff's costs.

### III.

### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

B. A plaintiff asserting discrimination because of sex bears a burden of proving her case by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Grubb v. W.A. Foote Memorial Hospital, Inc.,* 741 F.2d 1486 (6th Cir.1984). A defendant has the burden of producing a legitimate nondiscriminatory reason for the action. *Brooks v. Ashtabula County Welfare Department,* 717 F.2d 263 (6th Cir.1983).

 C. A freedom from discrimination does not require identity of treatment. It only requires that a classification rest upon real and not feigned differences and that the distinctions have some relevance to the purpose for which the classification is made. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Langland v. Vanderbilt University,* 589 F.Supp. 995 (M.D.Tenn.1984), *aff'd,* 772 F.2d 907 (6th Cir.1985).

 D. Where the evidence predominates that a female was denied tenure because of insufficient scholarship, such female has not demonstrated that the denial of tenure was as a result of her sex. *Langland v. Vanderbilt University,* 589 F.Supp. 995 (M.D.Tenn.1984), *aff'd,* 772 F.2d 907 (6th Cir.1985).

E. In accordance with the foregoing, the claims of sex discrimination pursuant to 42 U.S.C. § 2000e *et seq.* and 20 U.S.C. § 1681 *et seq.* are hereby DISMISSED at Plaintiff's costs.

LET JUDGMENT ISSUE IN ACCORD-
ANCE WITH THE FOREGOING.

IT IS SO ORDERED.