ACCESS 4 ALL, INC., and Felix Esposito, Plaintiffs,

v.

CASA MARINA OWNER, LLC, a Foreign Limited Liability Co., Defendant.

Nos. 06 10055 CIV KING, 06 10055 CIV GARBER.

United States District Court, S.D. Florida.

Oct. 3, 2006.

---

John Paul Fuller, Esq., Thomas B. Bacon, Esq., Fuller Fuller & Associates, P.A., North Miami, FL, Counsel for Plaintiff.

Aaron Behar, Esq., Richard James Lydecker, Esq., Lydecker Diaz Lee Behar Berga & De Zayas, Miami, FL, Counsel for Defendant.

### FINAL ORDER OF DISMISSAL WITH PREJUDICE

JAMES LAWRENCE KING, District Judge.

### I. BACKGROUND OF PLAINTIFFS' CLAIMS OF ARCHITECTURAL BARRIERS.

On May 18, 2006, Plaintiffs filed their Complaint seeking Injunctive Relief, a declaration from this Court, attorney's fees, litigation expenses and costs pursuant to alleged violations of the ADA. Plaintiff, Esposito, a resident of Margate, Florida,

generally alleged in his Complaint he "visited the property which forms the basis of this lawsuit and plans to return to the property to avail himself of the goods and services offered to the public at the property" and encountered architectural barriers at the property that endangered his safety. (Complaint ¶ 6). Furthermore, Plaintiffs generally alleged there is "a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA" and they will continue to be subject to discrimination by the Defendant, as Plaintiff, Esposito, "desires to visit Casa Marina Resort not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination". (Complaint ¶ 9).

Plaintiffs allege a number of violations of the ADA including: insufficient parking spaces, inappropriate parking signage, lack of access paths connecting all essential elements of the facility including access to all recreational areas, inaccessible counter heights, non-compliant restrooms, improper hardware for disabled patrons, inadequate number of guest rooms designated for disabled use (including those for hearing impaired), lack of equipment for use by the hearing and/or visually impaired, and lack of water access for wheelchair users to the outdoor pool. (Complaint ¶ 11).

## II. *THE EVIDENTIARY HEARING*

Plaintiff, Esposito, was the only witness to testify at the Evidentiary Preliminary Injunction Hearing on July 19, 2006. His testimony included details of his trip from Margate, Florida to Key West (approximately 200 miles), his arrival at the Casa Marina, the alleged barriers he encountered and his prior history of filing lawsuits against hotels for alleged violations of the ADA. Much more importantly, and as

the Court found instructive, Plaintiff, Esposito, made a number of statements and admissions that serve to render Plaintiffs' claims moot and necessitating the dismissal of the complaint when cross examined on Casa Marina's voluntary remedial program and the effects such program would have on Plaintiffs' claims, Plaintiff Esposito testified:

Q   Are you aware that the Casa Marina was recently purchased by Casa Marina Owner in approximately August 2005?

A   No.

Q   And are you aware that at the time of the purchase there was a comprehensive plan put into place to remodel the entire facility and bring it up to compliance with the ADA?

A   No, I didn't know that.

Q   And I take it you did not know that Casa Marina Owner had invested approximately 38 million dollars to begin this program, and that architectural plans have already been prepared and put into place for modifications?

A   I didn't know, but it sounds like a very good idea.

Q   And would you agree that if I'm accurate in my representations to you that the Casa Marina is undergoing these mass renovations, which should apparently be completed within a year or so, approximately, that really there is no other relief for this court to give you by virtue of this lawsuit? You would agree that; right?

A   I don't understand what you're saying.

\*      \*      \*      \*      \*      \*

Q   Would you agree that if my representations to you are accurate, those representations being that the Casa Marina Owner has invested approximately 38 million dollars to renovate

the facility and bring every aspect of it into compliance with the ADA, if I'm accurate in those representations to you, would you agree that you are not entitled to any other relief from this court?

A   I would agree, if that's what the man has plans to do.

Q   All right.   So if I can demonstrate to you that this plan has been initiated and is underway, would you agree then that the lawsuit really no longer has any merit to it?

A I'm not a lawyer.  I don't know nothing about legal stuff like that.  I have no idea.

Q   But it would have accomplished exactly the goals that you set out for this lawsuit;  correct?

A   Yes, and if they bring it into compliance for me, sure.

\*     \*     \*     \*     \*     \*

Q   Can you answer it?

A   I would fairly say yes and agree, if that's what's going to happen.

Q   Okay, fair enough.

(Exhibit "A", Transcript, pages 64–67).

THE COURT:  Well, excuse me. . . . Let me simply say that if it be true, if it be accurate that there is this type of program in effect to cure the matters that the plaintiff is complaining about, if that be true, if that's inaccurate, of course we've got a different situation.  If that's true, then that's what it is.

So it seems to me that what we ought to simply do is recess this at this point. We're wasting a lot of court time and everything else on a suit that the Court—there is no need to come to the Court to order the defendant to do what the defendant is already doing.

And the injunctive relief is the only thing sought.   There is no damages sought, nor could there be in a case of this type under these circumstances.  So therefore it would seem to me that it's

sort of an exercise in futility, or a pointless effort to go forward at this point. (*Id.* at 67–68).

\*     \*     \*     \*     \*     \*

MR. BEHAR:  My only concern is really just one based on experience that all this does boil down to is what they want in attorney's fees.   (*Id.* at 68).

\*     \*     \*     \*     \*     \*

THE COURT:  Based on this record, could you not submit that to the Court and each of you brief it?   And I could enter a one-line order one way or the other, and that would take care of it.   I don't know that there is anything further that really needs to be said.

The remedial aspect of the Americans with Disabilities Act is to bring properties into compliance so that persons who are disadvantaged or handicapped can use those public facilities—if they be in a hotel, that certainly is public facilities—in the same manner and with the same ability as any person that is not physically challenged.   Now that's the whole purpose of it, and that's what the DA is all about.

If this is being done or indeed if somebody complained to your hotel, and you went in the next 30 days or so and did it and took care of it, that takes care of it. That carries out the intent of Congress.

So what we're doing here is, I mean, spending a lot of time on barriers if it be accurate that they are being remedied. And I believe, as you say, only the possibility of—or whether or not attorney's fees are appropriate under the circumstances of the particular given case. And that is a matter where we could have a hearing on attorney's fees, and the plaintiffs can tell the Court why they think they are entitled to fees under these circumstances.   You would tell me why they are not.   And the Court would

decide. That's the only issue between you, it seems to me. (*Id.* at 68–69).

\* \* \* \* \* \*

But I'm not going to sit around and order somebody to do something that they have already done or they have already in place a program to do. That's not the purpose of injunctive relief, and that's what you're talking about. You can't file one of these suits and seek monetary damages and have standing. So we know what we're talking about. Everybody does.

\* \* \* \* \* \*

MR. FULLER: The answer is, if they are going to stipulate today that they are going to fix the problems we identified, this lawsuit is over. Let them enter into a binding agreement, sanctioned by this Court, that they are going to do it. (*Id.* at 71).

THE COURT: No, no, just a moment. Just a moment. That's—you're saying if he stipulates to this. This record here so far has developed to a point where the plaintiff says, and he is quite correct, that he is interested in the remedies that were barriers to his use of a facility. If they are in place, then the lawsuit is over. That's the case. (*Id.* at 71).

Therefore, by Plaintiff's, Esposito, own admissions he was not aware that the Casa Marina was purchased in August 2005 nor was he aware that at or around the time of purchase there was a comprehensive plan put into place to remodel the entire facility and bring it up to compliance with the ADA. (Exhibit "A" Transcript, page 64–65). Plaintiff further stated, that if the representations were accurate that the Casa Marina Owner has invested approximately $38 million to renovate the facility and bring it in compliance with the ADA then there "is no other relief for this court to give" by virtue of the lawsuit. (*Id.* at 65–66).

## III. DEFENDANT'S VOLUNTARY REMEDIAL PROGRAM TO REMOVE BARRIERS AT CASA MARINA.

The Defendant purchased the Casa Marina Resort in August 2005. (See attached Affidavit of Michael Stone, Exhibit "B"). During the purchase phase and shortly after the closing of the sale of the property, Defendant planned for and entered into negotiations with Gonzalez Architects regarding renovations and modifications to the Casa Marina Resort. (Exhibit "B"). On or about January 1, 2006, and on behalf of the Casa Marina Owner, LLC, the company entered into a contract with Jose Gonzalez, AIA, Gonzalez Architects, for services regarding the renovations of the Casa Marina Resort. (Exhibit "B"). A copy of the Agreement entered into between Casa Marina Owner, LLC and Jose Gonzalez, AIA, Gonzalez Architects is attached to the affidavit as Exhibit "A". The terms of this Agreement and the scope of services to be provided had been negotiated for several months by the company with Gonzalez Architects. This all occurred prior to the filing of this lawsuit.

The Defendant retained Gonzalez Architects as the architectural firm to develop plans and implement those plans for the renovation of the Casa Marina Resort on behalf of Defendant. (Exhibit "B"). Pursuant to the Agreement, it is Gonzalez Architect's duty to prepare drawings and submit them to the proper authorities for purposes of assisting in obtaining building permits and to certify such plans are in compliance with local, state and federal statutes and regulations as they relate to "accessibility for the physically challenged". (Exhibit "B").

As part of Jose Gonzalez's responsibilities, he obtained the scope of services needed for the Casa Marina renovations, developed a quote for architectural plans, prepared architectural plans for renova-

tions and modifications to the Casa Marina, submitted the plans to the City of Key West Planning Board (hereinafter "the City") and attended numerous meetings with the City and its various building boards/departments, including a meeting on July 27, 2006 for final approval of the plans. (See attached Affidavit of Jose Gonzalez, Exhibit "C"). A copy of the architectural planning documents are attached to Jose Gonzalez's affidavit as Exhibit "B". Mr. Gonzalez certified the plans were in compliance with applicable laws as required by the City of Key West Planning Board Guidelines in preparation of the architectural plans for renovations and modifications to the Casa Marina Resort. In submitting plans for approval by the City, Mr. Gonzalez was required to comply with "all ADA requirements for public lodging facilities". See City of Key West Planning Board Staff Report, attached to Jose Gonzalez's affidavit as Exhibit "C".

Mr. Gonzalez was required by the City to "supply the appropriate construction drawing reflecting ADA compliance at the time of building permit submittal". (Exhibit "C"). Finally, in submitting plans for the City's approval, Mr. Gonzalez was required to assist in obtaining all necessary permits and licenses, including building permits, which are required by federal, state, county, and city agencies. In an effort to confirm that the proposed renovations and architectural plans developed since the Defendant's purchase of the Casa Marina Resort comply with the ADA, Mr. Gonzalez examined the specific barriers alleged in Plaintiffs' Complaint. (Exhibit "C"). Furthermore, and again in an effort to confirm the accuracy of the proposed renovations and architectural plans, Mr.

Gonzalez also consulted with Dave Goldfarb, who is an expert in Title III ADA matters. (Exhibit "C"). Likewise, Mr. Goldfarb has confirmed that the architectural planning documents that Mr. Gonzalez prepared and submitted to the City address the remedy needed for those additional barriers that Mr. Goldfarb has encountered during his property inspection of the Casa Marina Resort on or about July 6, 2006. The renovation and construction of the Casa Marina Resort is to be completed by early 2008.

## IV. THIS COURT LACKS OF JURISDICTION OVER PLAINTIFFS' COMPLAINT AND CLAIMS AS NO ACTUAL OR PRESENT CONTROVERSY EXISTS.

### A. Plaintiffs' Failure to Adequately Investigate.

As explained and substantiated by Plaintiff's own testimony above, Plaintiff, Esposito, his related association, Access 4 All, and his legal counsel failed to undertake any due diligence or investigation whatsoever prior to filing their lawsuit against Defendant. Had such fundamental and good faith investigation, as required by Rule 11 of the Federal Rules of Civil Procedure, been conducted, Plaintiffs and their counsel would have discovered that this Defendant just recently purchased the Casa Marina Resort and that at or around the time of purchase, this Defendant had already commenced the process of planning for a wide-scale renovation of the property, which would have the effect of removing all architectural barriers, including those Plaintiff, Esposito, alleged to have encountered.[1] Defendant's remedial

---

1. This Court recognized the existence of a possibility that Plaintiffs and their counsel neglected their duty to investigate, when it said, "after you've had time to get back and review the documents and that sort of thing, all of which one would hope would be done before the complaint was filed. But now here we are, a few months later, and we're coming along and making progress." (Exhibit "A" Transcript, page 72–73).

plan, which existed prior to Plaintiffs filing their lawsuit, renders Plaintiffs' claims moot, as a matter of law, and subjects Plaintiffs' Complaint to dismissal.

What is more serious is that Plaintiffs obviously made a conscious and calculated decision to continue pursuing this litigation against Defendant after learning of the Defendant's renovation plans. Plaintiffs' counsel was expressly told on July 6, 2006 by Defendant's attorney, Defendant's ADA expert (Dave Goldfarb), and a representative of the hotel, that the Casa Marina Resort had recently been purchased and that prior to the filing of the lawsuit an investment of approximately $38 million had been budgeted for the purpose of securing full ADA accessibility and compliance. Despite Defendant's good faith disclosure to Plaintiff of these undisputed (and undisputable) facts, Plaintiffs and their counsel insisted on pursuing their "claims" and continued incurring substantial attorneys' fees, which as Plaintiff Esposito's testimony at the evidentiary hearing establishes, is their *modus operandi.*

### B. Plaintiffs' Claims Are Deemed Moot, As A Matter of Law, Requiring Dismissal.

■ Mootness is a jurisdictional defect that can be raised at any time by the parties or the court *sua sponte. Barilla v. Ervin,* 886 F.2d 1514, 1519 (9th Cir.1989). A claim is moot if it has lost its character as a "present, live controversy." *United States v. Geophysical Corp. of Alaska,* 732 F.2d 693, 698 (9th Cir.1984). The court cannot take jurisdiction over a claim to which "no effective relief can be granted." *Id.* If an ADA "plaintiff [has] already ... received everything to which [he] would be entitled", i.e., the challenged conditions have been remedied, then these particular claims are moot *absent any basis for concluding* that plaintiff will again be subjected to the same wrongful conduct by this defendant. *Parr v. L & L Drive–Inn Res-*

*taurant,* 96 F.Supp.2d 1065 (D.Hawai'i 2000). A defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. *Buckhannon v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). *Friends of the Earth v. Laidlaw Environmental Services,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

■ Plaintiffs' Complaint is moot as Defendant's plans for ADA compliant renovations were already in effect prior to Plaintiffs' filing their lawsuit, thus making it absolutely certain that any future ADA violations at the Casa Marina Resort could not be reasonably expected to occur. As set forth by Mr. Gonzalez and Mr. Stone in their affidavits (Exhibits "C" and "B"), Defendant planned for and entered into negotiations with Gonzalez Architects regarding renovations and modifications to the Casa Marina Resort and on or about January 1, 2006, the Contract was finalized and signed by Casa Marina Owner, LLC and Jose Gonzalez, for Gonzalez Architects. Furthermore, the Contract specifically required Mr. Gonzalez to certify the plans for renovation of Casa Marina Resort were in compliance with applicable laws as required by the City of Key West Planning Board Guidelines, submit plans for approval by the City, comply with "all ADA requirements for public lodging facilities" pursuant to the City of Key West Planning Board Staff Report, and assist in obtaining all necessary permits and licenses, including building permits, which are required by federal, state, county, and city agencies. (Exhibit "C"). Again, Mr. Gonzalez, in an effort to confirm the accuracy of the proposed renovations and architectural planning documents, consulted with

Mr. Goldfarb, an expert in Title III ADA matters, to confirm the previously prepared and submitted architectural planning documents remedied those barriers that Mr. Goldfarb encountered during his property inspection of the Casa Marina Resort on or about July 6, 2006. Those barriers were in fact remedied.

On July 19, 2006 at the Evidentiary Hearing, this Court in effect denied Plaintiffs' request for any injunctive relief following Plaintiff's, Esposito, admission that given Defendant's voluntary remedial program to remove barriers there no longer existed a "present, live controversy", thereby divesting this Court of jurisdiction over Plaintiffs' claims.[2] *Geophysical Corp. of Alaska*, 732 F.2d 693, 698. Plaintiff Esposito testified that given these renovations, the Defendant has accomplished the exact goals that he set out to accomplish by filing this lawsuit. (Exhibit "A" Transcript, page 66). Moreover, it is necessary to recognize that the Plaintiffs have not, nor can they present any competent or reasonable evidence whatsoever to suggest that they will again be subjected to the same ADA violations by this Defendant. It is axiomatic for Plaintiffs to suggest that once the renovations are completed they could be undone. Accordingly, there is no alternative but to conclude that Plaintiffs' claims are moot as a matter of law, thereby rendering Defendant the prevailing party in this action and foreclosing Plaintiffs' attempt to recover attorney's fees and costs.

### C. Attorneys' Fees and Costs.

█ While the catalyst theory is generally a permissible basis for the determination of entitlement to attorney's fees in certain types of lawsuits, the U.S. Supreme Court, in *Buckhannon v. West Virginia Dept of Health and Human Resources*, held the "catalyst theory" is not a permissible basis for the award of attorney's fees under the FHAA and ADA. 532 U.S. 598, 610, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

█ The resorts' voluntary decision to remedy any alleged barrier to access does *not* entitle Plaintiff to attorney's fees. In such a situation, the Supreme Court has held that the Plaintiff is *not* a prevailing party. *Id.* A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit lacks the necessary judicial imprimatur to make plaintiff a prevailing party for the purpose of entitlement to attorney's fees. *Id.* at 605, 121 S.Ct. 1835. A judgment on the merits and court-ordered consent decrees create a material alteration of the parties' legal relationship for the purposes of qualifying as a "prevailing party" for attorney's fees, *Id.* at 604, 121 S.Ct. 1835, neither of which have occurred in this instance. This Court specifically denied Plaintiffs' counsel's proposal to "enter into a binding agreement, sanctioned by this Court, that [Defendant is] going to do it." (Exhibit "A" Transcript, page 71).

█ The traditional rule in the United States is that each party to a lawsuit bears the cost of his or her own attorneys fees. *See Alyeska Pipeline Service, Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). When the policy imperatives of certain enumerated

---

**2.** To this end, the Court suggested that the parties should be at a point where they would need to submit to the Court those issues that each respective party felt remained pending. (Exhibit "A" Transcript, page 67–74). This Court has identified the only issue it believes to remain pending is, "whether or not Access 4 All was the catalyst that brought that about or not. That seems to be the only issue. But we will see what issues you come up with." (Exhibit "A" Transcript, page 74).

remedial statutes so demand, however, Congress has departed from this rule and authorized district courts to award attorney's fees to prevailing parties. *See, e.g., 42 U.S.C. § 1988(b)* ("the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the cost"). *See also Williams v. City of Fairburn, Georgia,* 702 F.2d 973 (11th Cir. 1983) (stating that *§ 1988* is remedial in nature and should be liberally construed so as to effectuate its purpose of enabling competent counsel to explore every aspect of a case); *42 U.S.C. § 12205* (stating that in "any action or administrative proceeding commenced [under the ADA], the court ... in its discretion may allow the prevailing party ... a reasonable attorney's fee ..."). The authority to grant attorney's fees is not exercised symmetrically, however. Whereas attorney's fees are presumptively appropriate in the case of a prevailing plaintiff, they are presumptively inappropriate when a defendant prevails.

The Supreme Court has held that in civil rights cases the "plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Bruce v. City of Gainesville,* 177 F.3d 949, 951–52 (11th Cir.1999) (holding that the Christiansburg standard applies under the ADA's fee-shifting provision). Determinations regarding frivolity are to be made on a "case-by-case basis." *Sullivan v. School Board of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir.1985).

In *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169 (11th Cir.2005), the Court addressed a request for attorney's fees by the Defendants after prevailing against an "ADA plaintiff" who had been a party to numerous ADA lawsuits. The Court ruled that the Defendants were entitled to attorney's fees and explained their reasoning as follows:

> "If trial courts do not impose reasonable discipline on ADA plaintiffs, hiring an ADA-protected employee becomes an exercise in Russian roulette in which employers never know if their policies and practices expose them to crippling liability. Allowing frivolous ADA lawsuits to go unchallenged will lead to a world in which employers will be forced by the prospect of unfair litigation to do whatever they can to keep the disabled out of their workplaces. This is hardly the future that the ADA envisions."
> *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169 (11th Cir.2005).

In the instant matter, the Plaintiff's own testimony and the Court's findings support Defendant's assertion that Plaintiff's claim is frivolous and groundless, justifying an award of attorney's fees to Defendant. Plaintiffs' counsel was expressly advised of the purchase of the hotel, the substantial investment budgeted for renovations, the extensive renovations, the retaining of an ADA expert, the retaining of an architect; all of which occurred prior to Plaintiffs' lawsuit. Nevertheless, Plaintiffs insisted on pursuing their claims even after it became clear that their claims became frivolous, unreasonable and groundless. This Court stated in this regard that "if it be accurate that there is a type of program in effect to cure the matters that the plaintiff is complaining about then that's what it is....We're wasting a lot of court time...on a suit that there is no need to come to the Court to order the Defendant to do what the defendant is already doing....So, therefore, it would seem to me that it's sort of an exercise in futility or a pointless effort to go forward...." (Exhibit "A" Transcript p. 67–68, lines 21–10). This Court expressly stated that if there

was no genuine issue as to the existence of a plan to bring the facility into compliance with the ADA requirements, this "would be a frivolous lawsuit and sanctions would be imposed." Accordingly, as such plans do in fact exist, the Court finds this lawsuit to be frivolous, unreasonable and groundless, subjecting Plaintiff to payment of Defendant's attorneys' fees and costs.

### CONCLUSION

This lawsuit is nothing more than an attempt to extort fees from Defendant without conducting any pre-trial due diligence or good faith attempt to investigate prior to filing their lawsuit. Based on this record and Plaintiff's own admissions during the July 19, 2006 Evidentiary Hearing, the relief Plaintiffs' seek in their Complaint is deemed moot as a matter of law. Because no effective relief can be granted to Plaintiffs, this Court cannot maintain jurisdiction over their claims. Because Plaintiffs have received everything they sought (i.e. the alleged barriers have been remedied) those claims are moot. Defendant has sufficiently demonstrated its voluntary decision to remedy any alleged barriers prior to the filing of Plaintiffs' lawsuit and thus the Plaintiffs are not prevailing parties entitling them to attorney's fees and costs.

It is: ORDERED, ADJUDGED and DECREED that the above-styled case be, and it is hereby DISMISSED WITH PREJUDICE. It is further

ORDERED, ADJUDGED and DECREED that Defendant's Motion for Attorney's Fees and Costs be and the same is hereby GRANTED. The Court retains jurisdiction to fix a reasonable fee and costs after memorandums and affidavits have been submitted by Defendant Casa Marina Owner, LLC of the fees and expenses it has incurred in defense of this litigation, and responded to by Plaintiffs.

Defendant shall submit its memorandum and affidavits within twenty (20) days hereof. Plaintiffs shall have twenty (20) days to reply to the Defendant's memorandum—with such memorandum and affidavits as they deem appropriate.