**Nick TUFARO, Plaintiff,**

v.

**Richard WILLIE, et al., Defendants.**

**No. 86–8312–CIV.**

United States District Court, S.D. Florida, N.D.

Jan. 31, 1991.

Donnie Murrell, West Palm Beach, Fla., J. Milano, Cleveland, Ohio, James Montgomery, Chicago, Ill., for plaintiff.

Adams Coogler Watson & Merkel, Monroe Coogler, West Palm Beach, Fla., for defendants.

## ORDER GRANTING ATTORNEYS' FEES

PAINE, District Judge.

This cause is before the Court upon the Defendants' Motion to Tax Costs and Attorney's Fees (DE 163), filed on October 7, 1987; Plaintiff's Motion for Extension of Time to File Memo in Opposition to Defen-

dants' Motion to Tax Costs (DE 165), filed November 30, 1987; and the Defendants' Motion to set Oral Hearing on Motion for Attorney's Fees (DE 168).

### FACTUAL AND PROCEDURAL BACKGROUND

In light of the fact that this lawsuit spans five years, the court has determined that the following brief review of the factual and procedural background of the case is necessary.

On June 3, 1982, Nick Tufaro barricaded himself in his townhouse in Greenacres, Florida. He telephoned the police department and threatened to blow up the building, himself, and others with explosives. The SWAT team of the Palm Beach County Sheriff's Office responded to the incident. During the episode, Deputy Frank Genovese was shot and killed.

On June 8, 1982, Tufaro was indicted for first-degree murder. He was held without bail from June 4, 1982 until September 2, 1984, after a protracted bond hearing, when bail was granted in the amount of $200,000. In November and December 1984, Tufaro was tried and the jury found him not guilty.

Thereafter, Tufaro brought this federal civil rights action for compensatory and punitive damages pursuant to 42 U.S.C. § 1983. He claimed that he was wrongfully arrested, detained without bail, and prosecuted because the Palm Beach Sheriff's Office deputies committed perjury and concealed evidence at the bond hearings. The Complaint alleged claims under both § 1983 and the Florida negligence statute. The Plaintiff specifically sought $6.75 million in compensatory damages and 15 million in punitive damages, jointly and severally against Defendant Willie, Thompson, and Valenzuela and $4.8 million in compensatory damages and 15 million in punitive damages against the Palm Beach Sheriff's Office.

The individual Defendants filed answers and counterclaims for $5 million compensatory and $15 million punitive damages against Tufaro for maliciously and repeatedly shooting at them.

In September, 1987, this court conducted a three week trial of this matter. On the first day of trial, the Defendants filed a motion pursuant to Fed.R.Civ.P. 41(b) to dismiss the Amended Complaint for failure to state a claim for which relief can be granted under either 42 U.S.C. § 1983 or Florida law.

After hearing all of the evidence, this court granted the Defendants' motion and dismissed all of the Plaintiff's claims with prejudice. The court entered findings of fact and conclusions of law specifically detailing how the evidence failed to show that there was a deliberate or calculated cover-up undertaken to deprive the Plaintiff of evidence which would support his position that he was not guilty of a criminal act.

Further, the court found that there was no reasonable basis to find that personnel of the sheriff's department deliberately withheld information of the firing of weapons by law enforcement personnel in order to conceal evidence which tended to exculpate the Plaintiff of the charge of homicide. The court specifically held that the facts as presented established no basis upon which it can be concluded that there was an effort to withhold evidence.

Finally, the court found that, as a matter of fact, the Plaintiff's own misconduct was the sole proximate cause of his arrest, incarceration without bail, and prosecution.

The court also entered Conclusions of Law, wherein the undersigned found that the evidence conclusively established that the Defendants had probable cause to arrest the Plaintiff on June 3, 1982. Further, this court determined that the Plaintiff was not denied bail in violation of the Eight Amendment and that even if he had an absolute right to same, the Defendants clearly did not deprive him of that right.

Finally, the court concluded that, as a matter of law, none of the Defendants violated any constitutional right of the Plaintiff.

After the court announced its Findings of Fact and Conclusions of Law, on October 7, 1987, the Defendants filed a motion to Tax Costs and Attorneys Fees.

## MOTION FOR EXTENSION OF TIME

█ The Plaintiff has, to this day, failed to substantively respond to the Defendants' Motion to Tax Costs and Attorneys Fees. Rather, *after* the allotted time passed for filing said response, the Plaintiff filed the instant motion for extension of time. The Plaintiff's motion for extension of time was filed on November 30, 1987, *after* the appropriate time to respond had passed and after the Defendants had already filed an Application to Grant Defendants' Motion for Attorneys Fees and Costs by Default (DE 164).

In the present case, in November of 1987, the Plaintiffs cited excusable neglect as the reason for the failure to timely oppose the motion. Since that time, on March 23, 1988, Mr. Jerry Milano wrote a letter to the court on behalf of the Plaintiff, urging the court not to consider the failure to file a response to be an admission by the Plaintiff of the Defendants' claim. Further, Mr. Milano requested guidance from the court as to "how the Court wishes [the Plaintiff] to proceed." *See* Letter received in Chambers, March 25, 1988, filed as supplement in Volume 3 of court file.

Rule 10(C) of the Local Rules of the Southern District of Florida provides: "each party opposing a motion shall serve and file an opposing Memorandum of Law not later than 10 days after service of the motion as computed in the Federal Rules of Civil Procedure. Failure to do so may be deemed sufficient cause for granting the motion by default." Pursuant to this rule, the court could have granted the Defendant's motion for default against the Plaintiff even before he filed his Motion for Extension of Time, when his allotted time to respond had already elapsed.

However, in the Plaintiff's Motion for Extension of Time (DE 165), Mr. Milano relies upon Fed.R.Civ.P. 6(b)(2) which confers upon the court the power to grant an extension of time after the time for filing has passed. However, said rule also requires the court to first make a finding of excusable neglect. In this regard, Mr. Milano states that the Plaintiff was represented by three attorneys, each of whom were under the impression that the others would be taking care of this matter. Further, he states that the failure to file a response was "nothing more than a case of crossed signals and by no means due to any inadvertence." The court vehemently disagrees.

First, the fact that the Plaintiff was represented by *three* attorneys defies a finding of excusable neglect, rather than supports one. Further, contrary to the Plaintiff's contention, this court finds that the three attorneys' failure to communicate which ultimately resulted in "crossed signals," supports, rather than refutes, a finding of inadvertence.

It is also relevant to note that, despite the Plaintiff's filing of the instant motion for extension of time, the Plaintiff has failed to file a proposed brief in opposition to the motion. Had the Plaintiff done so, the court might have more favorably considered his claim of excusable neglect. However, despite what the Plaintiff calls excusable neglect in timely filing a response, the fact is that the Plaintiff has failed to file any substantive document in this case since 1987.

To wait over three years without filing a response is clearly inexcusable. The Plaintiff cannot reasonably claim that this three year delay in filing was in reliance on the pending motion for extension of time.[1] If the Plaintiff's failure to file was truly the result of excusable neglect, then the Plaintiffs could have and should have filed an *untimely* response. While same may have fallen victim to a successful motion to strike as untimely, such an action might have further supported the Plaintiff's claim that the original failure to file was due only to excusable neglect and not due to inadvertence.[2]

---

1. In this regard, the court is compelled to note that even had the court timely ruled upon the Plaintiff's Motion for Extension of Time, in no event would the extension have exceeded a few months, let alone three years.

2. The Plaintiff's 1988 letter to the court requesting "guidance" has no effect. The letter was an inappropriate communication to the court; the Federal Rules of Civil Procedure offer guidance for attorneys practicing in Federal Court. Fur-

In view of all of the foregoing, the Plaintiff's tardy motion for extension of time to respond must be denied.

Despite the fact that the court could grant the instant motion by default, the court has determined that a review of same is necessary to determine what, if any, fees and costs are to be awarded in this case. Accordingly, rather than grant the Defendants motion for costs and fees *in toto* by default,[3] given the nature of the motion, the court will undertake a sua sponte review of same. However, this independent review is not intended to excuse the Plaintiff's default waiver of the right to respond to the Defendants' motion. Accordingly, if the court determines that the Defendants' Motion is meritorious, the granting of same shall be considered to be by default as authorized by the local rules.

## ATTORNEY'S FEES: STATUTORY BASIS

The Defendants, the prevailing parties in this litigation, defended this action brought pursuant to Title 42 U.S.C. § 1983, which establishes the right of a person to pursue a civil action based upon the deprivation of federally protected rights.

When Congress passed the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, it expressed its clear intent to provide for the award of a reasonable attorney's fee to the prevailing party as part of the taxable costs in a suit brought under any of several specified civil rights statutes. The applicable statute states in pertinent part that:

> In any action or proceeding to enforce a provision of section 1981, 1982, 1983, 1985, and 1986 of this title, title IX of public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, *in its discretion*, may allow the prevailing party, other than the United States, a rea-

> sonable attorney's fee as part of the costs.

42 U.S.C. § 1988 (1981) [emphasis added].

Congress expressly conferred upon this court broad discretion when making a determination of an award of fees. In this regard, the language of this statute clearly does not distinguish between prevailing plaintiffs and prevailing defendants, stating only that "prevailing parties" may receive reasonable attorneys fees. *See Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

■ However, the courts have determined that the standard for deciding a defendant's motion for attorney's fees is different from that used when a plaintiff has made the motion. *See Hughes, supra.* A prevailing Plaintiff will ordinarily receive attorneys fees absent special circumstances. A prevailing defendant seeking fees must show that the plaintiff's claim "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg,* 434 U.S. at 422, 98 S.Ct. at 701; *Hughes,* 449 U.S. at 14, 101 S.Ct. at 178.

The Eleventh Circuit enunciated the standard for determining a prevailing defendants entitlement to fees in *Sullivan v. School Board of Pinellas County,* 773 F.2d 1182, 1188–89 (11th Cir.1985). Relying on *Hughes* and *Christiansburg,* this Circuit held that a district court may in its discretion award attorneys' fees to a prevailing defendant upon a finding that the plaintiff's lawsuit was "frivolous, unreasonable or without foundation." *Id.* at 1188.

Further, this Circuit determined that in determining whether a suit is frivolous, "a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was

---

ther, even had the court been inclined to schedule a hearing on the motion for fees and costs, the Plaintiff would not have avoided the necessity of filing a written brief.

3. As stated in greater detail above, the local rules provide that this court may grant an unopposed motion by default.

ultimately successful." *Id.* at 1189, *quoting Jones v. Texas Tech University*, 656 F.2d 1137, 1145 (5th Cir.1981).

Finally, the *Sullivan* court concluded that determinations regarding frivolity are to be made on a case by case basis. However, the court noted that "cases where findings of 'frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a Fed.R.Civ.P. 41(b) motion for involuntary dismissal." *Sullivan* at 1189 [citations omitted].

In the present case, the Plaintiff's claims were ultimately dismissed pursuant to Fed.R.Civ.P. 41(b). Further, the court expressly found that the Plaintiff failed to produce any factual evidence supporting his claims and that the claims had no basis in law. *See generally*, Findings of Fact and Conclusions of Law. Accordingly, after having personally dedicated three weeks of in-court time to this matter, the undersigned exercises the sound discretion granted to him by both Congress and this Circuit, and finds that the Defendants in this case, as the prevailing parties, are entitled to an award of attorneys fees.

Therefore, the only question yet to be answered is: what amount of fees constitutes an appropriate award?

## CALCULATION OF ATTORNEYS' FEES GENERAL STANDARD OF REVIEW: REASONABLENESS

The calculation of reasonable attorney's fees is also clearly within the sound discretion of the trial judge. *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1187 (1983). There has been much activity in both the Supreme Court and the Eleventh Circuit addressing the appropriate standards for determining reasonable attorney's fees. In *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988), this circuit recognized that its decisions have "mirrored the evolving standards of the Supreme Court." The *Norman* decision provides the most recent framework, in this circuit, within which to analyze the reasonableness of an award of attorney's fees.

Prior to *Norman*, the Eleventh Circuit had relied largely upon the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) in determining the appropriateness of an attorney's fee award. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Therefore, this court finds that the general determination of the reasonableness of fees in the instant case is guided by the Eleventh Circuit's teachings in *both* the *Norman* and the *Johnson* cases.

## ANALYSIS

The Defendants have proposed the following Lodestar calculation for attorneys fees:

a. Attorneys Fees

19.3 hours at $65 per hour
910.50 hours at $75 per hour
471.37 hours at $85 per hour

Total Lodestar Request ............................. $109,609.00
Enhancement Request ...................................... $0

Total Attorney Fee Request ......................... $109,609.00

*Reasonableness of Hourly Rate*

■ The *Norman* court began its analysis by determining the reasonable rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). In *Norman*, the Eleventh Circuit also made it clear that "the applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates." *Norman* at 1299 (citing *N.A.A.C.P. v. City of Evergreen*, 812 F.2d 1332 (11th Cir.1987)).

■ Finally, the *Norman* court offered several factors and items of evidence which may be considered by the district court when determining the appropriateness of attorney rates. These factors are: (1) direct evidence of charges by lawyers under similar circumstances; (2) opinion evidence; and (3) the considerations outlined in *Johnson*, 488 F.2d 714 (5th Cir.1974).

The Defendants have filed an affidavit of Burke Culler, Jr. who testified that the total fee award in this case was, in his opinion, a reasonable fee for a case of this complexity. He does not, however, state with specificity what a reasonable hourly rate might be.

Having considered the prevailing rate in the market in 1986–87, and the other factors as set out in *Norman*, this court finds that a reasonable hourly rate for the 1986–87 pretrial preparation and trial of this matter is $75 per hour. The Defendant suggests a differentiated scale for in-court and out of court hours. However, the court finds that the average fee per hour of $75 is reasonable for all hours expended.

*Reasonableness of Requested Hours*

■ The next step in the computation of the lodestar is the ascertainment of reasonable hours. *Norman* at 1301. The Supreme Court requires fee applicants to exercise "billing judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). In this regard, the district court is given the discretion to exclude excessive or unnecessary work. *Id.*

The court finds that despite the length of this trial and the pre-trial preparation, 1,400 hours is an excessive number of hours expended in defense of this frivolous case. However, the court does acknowledge that this litigation was commenced on June 2, 1986 and the 3 week trial took place over one year later, in September of 1987. Further, defense counsel were adequately prepared and their defense of the case evidenced conscientious pre-trial preparation.

However, having considered the factors enunciated in *Johnson* and *Norman*, as well as the span of the litigation and the frivolous nature of the Plaintiffs' claims, the court finds that a reasonable number of hours expended in defense of this action is 1,000.

*Actual Calculation of Lodestar*

As stated above, the lodestar is determined by multiplication of a reasonable hourly rate times the number of hours reasonably expended. *Norman* at 1302. Accordingly, based upon the foregoing findings, the lodestar is as follows:

Attorneys Fees
1000 hours at $75 per hour ..... $75,000

Total Lodestar Calculation ....... $75,000

*Enhancement of the Lodestar*

■ After the lodestar is determined by multiplication of a reasonable hourly rate times the number of hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained. *Norman* at 1302. "If the result was excellent, then the court should compensate for all hours reasonably expended". *Norman* at 1302 (citing *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir.1987)). "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.* (citing *Hensley*, 461 U.S. at 436–

37, 103 S.Ct. at 1941)). The *Norman* court concluded that "if the results obtained were exceptional, then an enhancement of the lodestar might be called for." *Norman, supra.* (citing *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (*Delaware Valley Citizens' Council I*)). The *Norman* went on to define "exceptional results" as "results that are out of the ordinary, unusual or rare." *Norman, supra.*

■ Further, enhancement is permissible where the applicant has shown by specific evidence that "the quality of representation was superior to that which one could reasonably expect in light of the rates claimed." *Norman, supra.* (citing *Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984)).

■ In the present case, the court cannot make a finding that the results obtained were exceptional or extraordinary in light of the fact that the Plaintiff's claims were frivolous and necessarily resulted in an involuntary dismissal. Accordingly, there will be no enhancement based upon these qualitative factors.

*Enhancement for Delay in Payment*

■ Generally, it is well settled that an adjustment for delay in payment is appropriate in civil rights cases which span long periods of time. *See Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *Norman v. Housing Authority of Montgomery, supra,* 836 F.2d at 1302.

In *Jenkins,* the Supreme Court acknowledged that an enhancement of lodestar was appropriate in civil rights cases when it said:

Clearly, compensation received several years after the services were rendered— as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case

with private billings. *We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute.*

*Missouri v. Jenkins,* 109 S.Ct. at 2469. [footnote omitted] [emphasis added]. Additionally, prior to the Supreme Court's assertion in *Jenkins,* the Eleventh Circuit also recognized delay in the receipt of payment as a basis for enhancing an award of attorneys fees.

In the present case, the delay in payment was caused in part by the Plaintiff's attorneys failure to promptly respond to the instant motion. This delay in fully briefing the attorneys fees issue contributed to this court's failure to rule upon same. However, the Plaintiffs should not be required to bear a full enhancement as the court's crowded docket and active caseload also contributed to the delay in payment. Therefore, the court will permit an enhancement of only 10 percent as an adjustment for the delay in payment.

Accordingly, the court finds that the attorneys' fee award in this case will be as follows:

a. Attorneys' Fees

Total Lodestar Calculation ....... $75,000
b. Plus Enhancement at % 10 ..... $7,500

Total Attorney Fee Award ....... $82,500

*Award of Litigation Costs and Expenses*

■ The expenses incurred in litigation of this nature are intertwined with a reasonable attorney fee. *Missouri v. Jenkins, supra.* As this Circuit recognized in *Dowdell v. City of Apopka,* 698 F.2d 1181, 1190 (11th Cir.1983), "Reasonable attorneys fees ... must include reasonable expenses because attorneys fees and expenses are inseparably intertwined as equally vital components of the costs of litigation." Accordingly, it is the law of this Circuit that all

*reasonable expenses incurred during litigation,* with the exception of routine office overhead, are recoverable as litigation expenses. *Id.* at 1192 [emphasis added].

While 42 U.S.C. § 1988 expressly states that a reasonable attorney's fee may be awarded to the prevailing party "as part of costs," it must be noted that costs have not been allowed "as of course" to prevailing defendants. *See e.g. Desisto College v. Town of Howey-in-the-Hills,* 718 F.Supp. 906 (M.D. Fla.1989). However, this court finds that the applicable statute itself again makes no such express distinction.

In the present case, as discussed, *infra,* the Defendant has already met the higher burden for recovery of fees under the statute. Further, the case law overwhelmingly supports the proposition that attorneys fees as used in the statute includes out-of-pocket expenses in preparation for trial. *See Dowdell, supra; see also Ramos v. Lamm,* 713 F.2d 546, 559 (10th Cir.1983).

The Defendants have requested $35,-875.85 as reimbursement for the costs of litigating this action. The court has reviewed the itemization of these costs and has determined that same are reasonable. Specifically, the Defendants seek reimbursement for deposition transcription, fees for securing witnesses at trial, and demonstrative aids. In the opinion of this court, all of these fees are recoverable under the statute as reasonable out-of-pocket costs.

In view of all of the foregoing, it is

ORDERED and ADJUDGED that the Plaintiff's Motion for Extension of Time (DE 165) is DENIED as the court finds no excusable neglect warranting same. Therefore, it is

ORDERED and ADJUDGED that the Motion to Tax Costs and Attorney's Fees (DE 163) is hereby GRANTED by default pursuant to Local Rule 10. The Defendants' Motion to set Oral Hearing on same (DE 168) is DENIED as moot. The Defendants, the prevailing parties in this litigation, are hereby awarded the following attorneys fees and expenses:

1. Attorneys' Fees
    a. Total Lodestar Calculation ............. $75,000
    b. Plus Enhancement at % 10 ............. $7,500

    Total Attorney Fee Award................. $82,500
2. Costs
    Total Litigation Expenses Award............... $35,875.85
3. Interest
    a. Post-judgment interest at 12% per annum from the date of this order until payment.

---

*Final Summary of Award for Fees and Costs*

The Plaintiff shall pay to the Defendant $118,375.88 @ 12% interest per annum from the date of this order through payment.

DONE and ORDERED.