**RESOLUTION TRUST CORP.,**
etc., Plaintiff,

v.

**HALLMARK BUILDERS, INC.,**
et al., Defendants.

No. 90–581–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

March 13, 1992.

Adam Gillespie Adams, III, Harold S. Lippes, Bledsoe, Schmidt, Lippes & Adams, P.A., Jacksonville, Fla., for Resolution Trust Corp. and Duval Federal Sav. Ass'n.

David Hollingsworth Simmons, Drage, DeBeaubien, Knight & Simmons, Orlando, Fla., Robert K. McIntosh, Stenstrom, McIntosh, Julian, Colbert, Whigham & Simmons, P.A., Sanford, Fla., for Hallmark Builders, J.C. Concrete & Masonry and Schilke Enterprises, Inc.

Ronald Wilbur Sikes, Universal Studios Florida, Orlando, Fla., for John W. Hursey and Mark A. Hursey.

Dale A. Konigsburg, Rinker Materials Corp., West Palm Beach, Fla., for Rinker Materials Corp.

T. Kevin Knight, Drage, DeBeaubien, Knight & Simmons, Orlando, Fla., for Ronald D. Nutt.

## REPORT AND RECOMMENDATION

BAKER, United States Magistrate Judge.

TO THE UNITED STATES DISTRICT COURT:

## I. INTRODUCTION

This case is before the Court on a post-judgment motion by the Plaintiff Resolution Trust Corporation ("RTC") for an award of attorney's fees. The matter has been referred to the undersigned United States Magistrate Judge for the conduct of appropriate proceedings and the preparation of a Report and Recommendation for disposition of the matter.

This case and, in particular, this motion exemplify a disturbing and increasing trend in contemporary litigation: the multiplication of proceedings without due regard for the amount and issues in controversy, followed by disputes over fees which can dwarf the underlying transactions. In many cases, no one is to "blame."

The plaintiff seeks only to recover what is owed. The defendant exercises its right to raise arguable defenses and take advantage of delays inherent in the system. Clients want their respective positions fully pressed, and attorneys are duty bound to

be zealous advocates. Statutes and case law are complicated and sufficiently ambiguous to permit extended arguments and successive motions in what should be routine actions. Economic conditions, including the failure or transformation of major financial institutions, add a layer of complexity and can change the rules in mid-litigation. Particularly in a case where fees are to be borne by someone other than the lawyer's client, it is all too easy for costs and proceedings to expand beyond reason.

Crowded court dockets do not permit active judicial intervention in cases which might otherwise be pruned at an earlier stage. The result, all too often, without anyone having done anything improper under the rules, can be appalling.

A simple suit to collect on a note may take years to resolve and generate fee claims far exceeding the amount of the note. Neither client is well served by this result. The system itself suffers. Attorneys potentially may gain fees but can hardly find such a practice rewarding. Justifiably, the public considers such costs and delays unwarranted or worse. Naturally enough, the attorneys receive the criticism for this result, even though (as noted above) clients are often the driving force behind the expansive scope of the litigation. Fairly deserved or not, this criticism is not healthy for the legal profession. As officers of the court, attorneys must implement their zealous advocacy using a perspective that looks beyond the next motion.

In some cases, where a general principle is at stake or a broader interest is being served, fees far exceeding the amount specifically in controversy may be justified. However, ordinary commercial litigation cannot be conducted without keeping an eye on the complexity and cost of the proceedings. If litigating a $50,000 claim on a note were routinely to generate fees and claims for fees of more than $200,000 collectively, commercial transactions would effectively be unenforceable, and the civil justice system would be a hollow mockery.

## II.  UNDERLYING CASE

### A.  Proceedings for Which Fees are Sought

In 1983, Hallmark Builders ("Hallmark") contracted with Mr. and Mrs. Berger and Mr. and Mrs. Hursey to construct their homes. Hallmark sought financing from Duval Federal Savings and Loan Association ("Duval"). In November 1983, Duval loaned Hallmark $54,000 to build the Bergers' residence and $49,000 to build the Hurseys' residence. Hallmark signed a promissory note and construction loan agreement and conveyed a first mortgage to Duval on each parcel of land. Hallmark had six months to pay both notes at a monthly interest rate of twelve-and-one-half percent. Ronald D. Nutt ("Nutt"), president of Hallmark, guaranteed both promissory notes, and Duval disbursed the funds. At the end of the six month period, Hallmark defaulted by failing to make any payments of interest or principal.

In June 1984, Hallmark filed for bankruptcy under chapter 11. In its petition for relief, Hallmark identified Duval as a secured creditor. Also, because the Bergers and the Hurseys refused to purchase the homes, Hallmark brought an adversarial lawsuit against them in bankruptcy court. Hallmark received a judgment against each party.

Under the terms of the final plan of reorganization, Hallmark agreed to pay Duval the outstanding amount on the loans in equal installments over three years. Hallmark, however, never made a payment, and in November 1986, Duval filed suit in state court to foreclose on both mortgages. Duval later amended its complaint to include the guaranties Nutt made on the promissory notes.

Duval then petitioned the bankruptcy court either to dismiss Hallmark from its chapter 11 proceeding, to convert the proceeding to chapter 7, or to enforce the reorganization plan. The court denied Duval's motion but granted it the right to file suit in state court to enforce the terms of the plan. Duval amended its complaint and added a count to enforce the provisions of the final reorganization plan. Duval again

amended the first two counts of its complaint to indicate that Duval had agreed to the sale of the mortgaged properties and to the release of the mortgages in exchange for partial payment of outstanding balances. The first two counts, thereafter, sought recovery only on the underlying notes. The amount due and owing on the first loan was $22,794.89, plus interest. The amount due and owing on the second loan was $8,848.23, plus interest.

In January 1990, the Office of Trust Supervision appointed the Resolution Trust Corporation ("RTC") as liquidation receiver of Duval. RTC became the plaintiff and counter-defendant in this action and removed the action to this court.

The District Court granted RTC's Motion for Summary Judgment which resolved, in RTC's favor, all issues raised by its complaint and Defendants' counterclaims. A Final Judgment for RTC was entered August 14, 1991, providing that RTC recover from Hallmark and Nutt, jointly and severally, $50,741.22. The Court retained jurisdiction to award RTC its reasonable attorneys fees from Hallmark and Nutt.

RTC filed its Motion for Award of Attorneys Fees September 25, 1991.

### B. Basis for Fee Claim

The mortgages, the mortgage notes, and the construction loan agreements at issue in this action provide the legal basis for an award of attorneys fees to RTC. More specifically, paragraph 3 of the mortgages, paragraph 10 of the construction loan agreements, and the unnumbered paragraph in the mortgage notes which states "All parties liable for the payment of this note agree to pay the holder hereof a reasonable attorneys fee for the services of counsel employed after maturity or default to collect this note, or to protect or enforce the security thereof, whether or not suit be brought," establish RTC's contractual right to an award of attorneys fees.

### III. APPLICABLE LEGAL STANDARDS

■ In *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988) (hereinafter referred to as *"Norman"*), the Court articulated the proper analysis for determining a reasonable attorney's fee. For many years, the twelve factors of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) provided the framework for attorney's fee decisions in this circuit. However, in recent years, the Court has followed the Supreme Court and has moved away from the subjective *Johnson* factors and toward the more objective lodestar [1] approach to determining reasonable attorney's fees. *Id.* at 1299. In *Norman*, the Court stated that some of the *Johnson* factors still have utility in establishing the reasonable hourly rate, however, the Court's opinion was a straight forward lodestar analysis discussing reasonable rate, hours reasonably expended, and adjustment of the lodestar amount.

### A. Reasonable Hourly Rate

■ A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547–48 n. 11, 79 L.Ed.2d 891 (1984)). The burden is on the fee applicant to provide satisfactory evidence—in addition to the attorney's own affidavit—that the requested rates are reasonable. *Norman*, 836 F.2d at 1299 (citing *NAACP v. Evergreen*, 812 F.2d 1332, 1338 (11th Cir.1987)). Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. *Norman* at 1299.

■ When resolving a motion for attorneys fees, the court is itself an expert on

1. The lodestar amount is the initial estimate of the value of a lawyer's services. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The lodestar amount is determined by multiplying a reason-able hourly rate times the number of hours reasonably expended. *Id.* This lodestar amount may then be adjusted upward or downward, based upon other considerations. *Id.* at 434, 103 S.Ct. at 1939.

the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value. *Id.* at 1303 (citing *Campbell v. Green,* 112 F.2d 143, 144 (5th Cir.1940)).

When a case lasts a number of years, resulting in a delay in the receipt of payment by counsel for the prevailing party, the court should take into account the effects of inflation and interest and generally award compensation at the current rates charged by the lawyers rather than at historic rates. *Norman* at 1302; *Johnson v. University College of the University of Alabama Birmingham,* 706 F.2d 1205 (11th Cir.1983); *Morgado v. Birmingham–Jefferson County Civil Defense Corps.,* 706 F.2d 1184 (11th Cir.1983). Otherwise, the passage of time would dilute the eventual award and an otherwise reasonable fee could be converted into an unreasonably low one. *University College* at 1210.

### B. Hours Reasonably Expended

The second factor in the lodestar formula is hours reasonably expended. A court must exclude excessive, redundant or otherwise unnecessary hours. *Norman* at 1301. Excessive or unnecessary hours are those hours that would be unreasonable to bill to one's client. *Id.* (citing *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939). Redundant hours occur when a client has multiple attorneys and the attorneys are unreasonably performing the identical tasks. *Norman* at 1302. The court must also deduct time spent on discrete and unsuccessful claims. *Id.* (citing *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940).

Time expended defending a counterclaim may be included as hours expended when the plaintiff must prevail on the counterclaim in order to recover on its claims. *Erickson Enterprises, Inc. v. Louis Wohl & Sons, Inc.,* 422 So.2d 1085 (Fla. 3rd DCA 1982); *Vistaco, Inc. v. Prestige Properties, Inc.,* 559 So.2d 744 (Fla. 1st DCA 1990).

### C. Adjustments of Lodestar

After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for the results obtained. *Norman,* 836 F.2d at 1302. The adjustment may be an enhancement or a reduction, depending upon the results of the litigation. The lodestar may also be enhanced in contingency fee cases and where there has been a delay in the receipt of payment by counsel for the prevailing party. *Id.*

If the result obtained was excellent, then the court should compensate for all hours reasonably expended without any enhancement or reduction. *Id.* (citing *Popham v. City of Kennesaw,* 820 F.2d 1570, 1578 (11th Cir.1987)). If the result obtained was exceptional, then some enhancement of the lodestar might be called for. *Norman* at 1302 (citing *Pennsylvania v. Delaware Valley Citizen's Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). To be exceptional, results must be unexpected, out of the ordinary, unusual or rare. *Norman* at 1302. Even if the result obtained is exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed. *Id.* (citing *Blum v. Stenson,* 465 U.S. at 899, 104 S.Ct. at 1548).

If the result obtained was of partial or limited success, the lodestar must be reduced to an amount that is not excessive. *Norman* at 1302 (citing *Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1940–41). The amount of any reduction may be determined by eliminating the hours spent on unsuccessful claims from the lodestar calculation or the court may simply reduce the award by some proportion. *Id.* However, a reduction based on a simple ratio of successful issues to issues raised is improper. *Id.*

### D. Effect of Fee Agreement

Under Florida law, where a fee agreement provides for the attorneys to be

paid the greater of either a contingent fee or a reasonable fee as determined by the court, the contingent fee does not preclude the court from awarding a reasonable attorney's fee in excess of the contingent amount. *Florida Patient's Compensation Fund v. Moxley*, 557 So.2d 863 (Fla.1990); *Pendley v. Shands Teaching Hospital and Clinics, Inc.*, 577 So.2d 642 (Fla. 1st DCA 1991); *Tampa Bay Publications v. Watkins*, 549 So.2d 745 (Fla. 2d DCA 1989).

### E. Necessity of a Hearing

▮▮▮▮ A court may award attorney's fees based solely on the affidavits in the record. *Norman*, 836 F.2d at 1303. Even where the documentation is inadequate, the court has the power to make an award of fees without the need of further pleadings or an evidentiary hearing. *Id.* (citing *Davis v. Board of School Commissioners of Mobile County*, 526 F.2d 865, 868 (5th Cir.1978)). In limited circumstances, an evidentiary hearing may be required, as where the written record is not sufficiently clear to resolve disputes of fact or where there is a dispute of material historical fact. *Norman* at 1303.

### IV. FEE CLAIM

#### A. Plaintiff's Request

During the early stages of this action, the law firm of Bledsoe, Schmidt, Lippes & Adams, P.A. ("Firm") represented Duval. The Firm rendered services for Duval in the prosecution of this action from May 16, 1986 through December 31, 1989. During this period, Duval agreed to pay and did pay the Firm a fee based upon an hourly rate times the number of hours expended. Duval paid fees totalling $69,464.

Following RTC's appointment as Receiver in January 1990, the Firm continued to expend time in the prosecution of this action as attorneys for RTC. The fee agreement between the firm and RTC provided that RTC would pay the Firm a fee equal to 25% of the total amount recovered (including principal, interest, and attorneys'

fees) plus costs, or the amount awarded by the Court as a reasonable fee for services rendered on behalf of RTC, whichever is greater.[2] The Firm has expended a total of 455.5 hours since RTC was appointed Receiver. The Firm has not yet been paid.

RTC seeks an award of fees within the range of $90,138 to $95,716 for the services of its attorneys through December 31, 1989. This figure is based upon the number of hours expended between May 16, 1986 and December 31, 1989 multiplied by the Firm's current hourly rates. RTC also seeks an award in the range of $50,762 to $51,797 for the period after December 31, 1989. This figure is based upon the number of hours expended between December 31, 1989 and August 31, 1991 multiplied by the Firm's current hourly rates.

RTC seeks attorneys' fees based upon a total of 1085.5 hours expended by the Firm over the course of this action. This includes 630 hours from May 16, 1986 through December 31, 1989 and 455.5 hours from December 31, 1989 through August 31, 1991. RTC would then have the Court calculate the fee by multiplying these hours by the Firm's current hourly rates which range from $50 per hour for law clerks and paralegals; $90 to $115 per hour for associates; and $165 to $175 per hour for partners. RTC seeks the Firm's current hourly rates and not the rates which were in effect during the years the Firm performed the services.

#### B. Evidence in Support of Request

RTC has filed the affidavit of Adam G. Adams, III, Esquire, a partner in the Firm in support of its motion. The Adams affidavit sets forth the hours expended by the Firm, with a detailed list of the Firm's billing entries and the Firm's hourly rates. The affidavit also states Adams' experience and qualifications as a lawyer practicing in the Middle District of Florida. RTC has also filed the affidavit of John A. DeVault, Esquire, in support of its motion. Mr. De-

---

2. Defendants argue that the fee agreement between RTC and the Firm is a contingent fee agreement and does not provide the alternative of paying a reasonable fee as determined by the court. This issue is discussed in Section V(B) below.

Vault states that the number of hours expended by the Firm is reasonable; that the current hourly rates charged by the Firm reflect rates charged by attorneys with similar experience and expertise in the Middle District of Florida and are therefore reasonable; that fees in the amount of $69,464 be awarded for the period from May 16, 1986 to December 31, 1989 (to reimburse the client for fees actually paid) and $51,718 for the period from December 31, 1989 through August 31, 1991 (lodestar amount calculated at current hourly rates).

### C. Defendant's Objections

Defendants Hallmark and Nutt object to RTC's motion on a number of grounds in their Response to Plaintiff's Motion and their Supplemental Memorandum of Law.

First, Defendants argue that all attorney's fees incurred prior to RTC's substitution as Plaintiff should not be recovered. They base this argument primarily on the language of the loan documents which entitle RTC to recover attorneys' fees. According to Defendants' interpretation of the pertinent language, the holder of the note is entitled to receive *its* reasonable attorneys' fees. Since RTC is the holder of the note and has been so only since January, 1990, only fees incurred *after* that date are recoverable by RTC and none of the fees incurred by Duval can be recovered by RTC.

Second, Defendants argue that the hourly rates sought by the Firm are unreasonable. According to Defendants, the Firm's failure previously to represent RTC means that the Firm is inexperienced and, according to current case law, its hourly rates should be reduced due to this inexperience. Defendants also filed the affidavits of two attorneys to support their objections. These attorneys state that the hourly rates sought by the Firm are unreasonable in light of the Firm's inexperience in representing RTC and the prevalent market rate for attorneys of similar experience and expertise in the central Florida area.

Third, Defendants argue that the number of hours requested in RTC's motion is unreasonable. As noted above, Defendants

seek to eliminate hours the Firm expended prior to the time RTC became holder of the note. These hours include time spent representing Duval in Hallmark's bankruptcy proceeding and in the state court action filed by Duval. Further, Defendants argue that the Firm unreasonably delayed the proceedings in this action and thus, the number of hours is unreasonable even if the Court finds RTC entitled to recovery of fees incurred prior to its appointment as receiver. Defendants also seek to reduce the number of hours requested by eliminating hours spent by RTC defending Defendants' counterclaims.

Fourth, Defendants argue that any lodestar amount in this case should be reduced given the results obtained. The Defendants point out that RTC's request for fees in excess of $140,000 is out of proportion with the Final Judgment of just over $50,000.

Fifth, Defendants argue that any request for enhancement of the lodestar for delay should be denied. Any delay caused by Defendants' affirmative defenses and counterclaims should not result in punishment of Defendants because prior to RTC's involvement in this case, those defenses and counterclaims were valid under state law.

Sixth, Defendants argue that the fees requested should be limited to 25% of the Final Judgment. Defendants base this argument upon their interpretation of the fee agreement between RTC and the Firm.

## V. APPLICATION OF LEGAL STANDARDS

### A. Necessity of a Hearing

An evidentiary hearing is not necessary in this case. Defendants do not raise any disputed material historical facts. The disputes that are raised do not require an evidentiary hearing nor oral argument for their resolution because the parties have fully and clearly briefed the issues, making it possible for the court to resolve the issues on the record before it. *Norman*, 836 F.2d at 1303.

### B. Effect of Fee Agreement

The fee agreement between RTC and the Firm creates a preliminary issue. The agreement, as evidenced by two documents attached as Exhibit "C" to Defendants' Supplemental Memorandum, provides that RTC will pay the Firm:

[T]he greater of (a) 25% of the amount recovered (including principal, interest, and attorneys' fees) plus costs, or (b) the amount awarded by the court as a reasonable fee for services rendered since the time of RTC's receivership through completion of the action plus costs.

Defendants contend that the fee agreement does not present alternatives but is, in fact, a straight contingency fee agreement. The correspondence between the Firm, Duval, and the RTC (Exhibit "C" to Defendants' Supplemental Memorandum) does not support Defendants' position. The letter from the Firm to James Blackburn of Duval sets out the fee options the Firm had decided to present to Duval and RTC. Although the memorandum from Blackburn to Carolyn Chaney of RTC does not spell out the entire text of the Firm's Option No. 2, it is clear that RTC chose to proceed under that option, which provides alternative provisions for calculating attorney's fees.

In *Florida Patient's Compensation Fund v. Moxley*, 557 So.2d 863 (Fla. 1990), the Florida Supreme Court had before it a fee agreement similar to the agreement at issue in this case. The Moxleys had agreed to pay their attorney a percentage of the recovery or the amount of reasonable fees determined by the court, whichever was the greater. *Id.* at 864. The Court rejected the argument that *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145 (Fla.1985) precluded a recovery greater than the amount of the percentage agreed upon between the Moxleys and their attorney. Thus, when there is an alternative fee recovery clause in the fee agreement, the court may determine what is a reasonable fee in excess of any stated contingency percentage. *Moxley* at 864; *Tampa Bay Publications v. Watkins*, 549 So.2d 745 (Fla. 2d DCA 1989); *Pendley*

*v. Shands Teaching Hospital and Clinics, Inc.*, 577 So.2d 642 (Fla. 1st DCA 1991).

The cases cited by Defendants in support of their argument to limit the fees to 25% of the recovery do not apply in this case. In *Miami Children's Hospital v. Tamayo*, 529 So.2d 667 (Fla.1988), *World Service Life Insurance Co. v. Bodiford*, 537 So.2d 1381 (Fla.1989), and *International Bankers Ins. v. Wegener*, 548 So.2d 683 (Fla. 3rd DCA 1989), the fee agreements involved were straight contingency agreements. The agreements did not provide an alternative as in *Moxley* or the case at bar.

In *Pezzimenti v. Cirou*, 466 So.2d 274 (Fla. 2d DCA 1985), the Court limited the recovery for attorney's fees to the amount the party is obligated to pay his lawyer, per the fee agreement, or a reasonable fee, whichever is lower. *Pezzimenti* does not change the result in the present case. RTC must pay the Firm either 25% of the recovery or a reasonable fee as determined by the court, whichever is greater. This case falls completely within the first clause of the *Pezzimenti* holding. The second clause, or everything after the "or" is inapplicable.

The Court finds that the fee agreement in this case requires RTC to pay the Firm the greater of 25% of the recovery or a reasonable fee as determined by the Court. The Court now turns to the determination of that reasonable fee, by determining the lodestar factors, reasonable hourly rate and number of hours reasonably expended, calculating the lodestar amount, and making proper adjustments to the lodestar amount.

### C. Reasonable Hourly Rate

#### 1. Current or Historic Hourly Rate

RTC seeks attorney's fees based on the current hourly rates charged by the Firm rather than the rates charged when the services were rendered due to the extensive period of time over which the legal services were rendered and the delay in payment or reimbursement of monies incurred for legal fees. The affidavit of DeVault in support of RTC's motion ex-

presses the opinion that the current (1991) rates charged by the Firm are reasonable in light of the customary fees charged by attorneys practicing in the Middle District of Florida of similar experience and expertise.

Defendants do not directly address the current or historic rate issue. Defendants do argue that the lodestar amount should not be enhanced because of any delay in payment since the case proceeded swiftly after its removal to federal court. Defendants also argue that RTC is not entitled to an award of any fees incurred prior to the RTC becoming receiver for Duval. Essentially, Defendants argue that RTC is entitled to fees since 1990 only, thus limiting or eliminating the current rate issue.

RTC's entitlement to an award of fees incurred prior to its becoming receiver is discussed in Section V(D)(1) below. Defendants' claim that the case proceeded swiftly after removal does not preclude an award of attorney's fees at the Firm's 1991 rates. The cases addressing this issue make clear that the problem to be avoided by using the current billing rate is the effect that the passage of time has on money. *See Norman,* 836 F.2d at 1302; *University College,* 706 F.2d at 1210–1211.

"Proceeding swiftly" is a subjective evaluation which can vary with the complexities of a given case. The better standard for determining whether to apply current or historic rates is the simple passage of time. Use of this objective standard will eliminate troublesome subjectivity and will keep the analysis true to the purposes of applying current rates—to account for the time value of money and the effects of inflation. The case at bar has its origins in the mid 1980s. The Firm has been protecting and prosecuting the claims of Duval and RTC against these Defendants for almost six years to date. This is exactly the type of case which demands applying current hourly rates to account for the effect that passage of time has on money.

### 2. Reasonableness of Hourly Rates

RTC, in its affidavits, quotes the following as reasonable hourly rates for the Firm:

| | |
|---|---|
| Terrance E. Schmidt | $175/hr. |
| Adam G. Adams, III | $165/hr. |
| Harold S. Lippes | $165/hr. |
| Julie Hills Tucker | $115/hr. |
| Stephen K. Moonly | $115/hr. |
| Cheryl A. Roberson | $ 90/hr. |
| Jennifer G. Bailey | $ 50/hr. |
| Lynn M. Shackow | $ 50/hr. |
| Courtney K. Grimm | $ 50/hr. |
| Summet Kaul | $ 50/hr. |

Defendants have filed two affidavits which discuss the reasonableness of the Firm's rates. Not surprisingly, these rates are significantly lower than those offered by RTC. The affidavit of Andrew L. Reiff, Esquire, sets reasonable 1991 hourly rates for attorneys in Central Florida with the same experience and expertise as the Firm at $125 per hour for partners, $75–$100 per hour for associates, and $45 per hour for law clerks and paralegals.

The affidavit of Mark P. Lang, Esquire, states simply that $125 per hour is the reasonable rate for work performed by the Firm. Lang does not distinguish or differentiate rates that would be charged for the work of a partner versus the rates for the work of an associate, law clerk, or paralegal. In this respect, Lang's affidavit is insufficient and is of no help to the Court in resolving this issue.

It appears from Defendants' memorandum and the Reiff affidavit, that the discrepancy in reasonable hourly rates submitted by the parties hinges upon the question of experience. Specifically, Defendants claim that the Firm is inexperienced because it never represented RTC before. This lack of experience would require the firm to be compensated at a rate charged by other firms that are equally inexperienced in foreclosure cases.

The firm has never represented RTC before, but this merely indicates that RTC is not a steady client of the Firm. This fact does not lead to the conclusion that the Firm lacks experience in foreclosure actions. When RTC became involved, some new substantive issues were presented, but there is no evidence in the record that the

firm was unable to deal efficiently with these issues, as a result of inexperience.

While the Court would have preferred more detailed information regarding the experience levels of the individual attorneys working on this case, the Court finds that the hourly rates proposed by the RTC, as set out fully above, are reasonable, with the exception of the $175 per hour rate for Terrance E. Schmidt. The Court finds a reasonable rate for Mr. Schmidt to be $165 per hour. The rates proposed by Defendants are unreasonably low. They are based on rates for attorneys inexperienced in loan foreclosure actions. The Defendants rely solely on the fact that the Firm has never represented RTC for the conclusion that the Firm is inexperienced in foreclosure actions. However, as discussed above, Defendants' reliance is misplaced. The affidavits of DeVault and Adams establish that the Firm has experience in commercial litigation and, specifically, foreclosure matters. Moreover, these rates correspond to the Court's own awareness of reasonable fees for commercial litigation in this District.

### D. Hours Reasonably Expended

#### 1. Hours Prior to RTC Involvement

■ Fees incurred prior to the RTC takeover of Duval are recoverable. This is supported by both the language of the mortgage notes and 12 U.S.C.A. 1821(d)(2)(A) (West Supp.1992). Defendants give a cramped interpretation to the attorney's fees provision of the mortgage notes. While attorney's fee provisions must be strictly construed, (*Vistaco, Inc v. Prestige Properties, Inc,* 559 So.2d 744 (Fla. 1st DCA 1990)), Defendants' construction of the provision at issue in this case is inaccurate and, as a result, too strict.

Further, as Receiver of Duval, RTC became successor to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C.A. 1821(d)(2)(A) (West Supp.1992). This includes the right to collect attorney's fees owing to Duval, the insured depository institution.

#### 2. Unreasonableness of Hours

Defendants argue that the number of hours expended by the Firm is unreasonable. Defendants do not identify any specific hours claimed by RTC as excessive, redundant or unnecessary. Instead, Defendants make a general claim that the Firm spent too much time prosecuting RTC's claim and defending Defendants' counterclaims.

■ Specifically, Defendants point to the dismissal of RTC's state court complaint by the court just prior to trial as cause for the unreasonable number of hours expended by the firm. The essence of the argument is that this dismissal caused a delay which eventually resulted in RTC becoming involved in the litigation which in turn led to removal of the case to federal court and more delays. Because of these delays, Defendants would have the Court penalize RTC and eliminate an unspecified number of hours from RTC's claim for attorney's fees.

The Court finds that RTC did not delay the case so as to be penalized.[3] The issue of the state court dismissal and re-pleading is inconsequential and does not render any hours claimed by RTC excessive, redundant or unnecessary. Further, the Court finds that Defendants have failed to identify any other hours expended by the Firm which should be excluded from the lodestar calculation because they are excessive, redundant or unnecessary.

#### 3. Counterclaims

■ Finally, Defendants argue that RTC is not entitled to attorney's fees for time spent defending the counterclaims asserted against it. Defendants raised three

---

**3.** This is consistent with the findings of the District Court in its Order granting RTC's motion for summary judgment. There, Defendants argued that RTC's ability to recover interest on the notes should be limited because of delays caused by Duval's state court pleadings. The Court rejected that argument, finding that Duval and RTC did not act in such a manner during the litigation of the action to warrant limiting the amount of interest.

counterclaims in this action: (1) breach of contract, (2) tortious interference with contractual relationships, and (3) breach of fiduciary duty. Defendants also raised these identical issues as affirmative defenses.

RTC was compelled to respond to these affirmative defenses in order to recover on its complaint against Defendants. Obviously, RTC would also be defending the identical counterclaims while defending the affirmative defenses. In such a situation, RTC is entitled to an award of fees for time spent defending these affirmative defense-counterclaims. *Erickson Enterprises, Inc. v. Louis Wohl & Sons, Inc.*, 422 So.2d 1085 (Fla. 3rd DCA 1982); *Vistaco, Inc. v. Prestige Properties, Inc.*, 559 So.2d 744 (Fla. 1st DCA 1990). The counterclaims were part and parcel of the original action. *Erickson* at 1086.

*Erickson Enterprises* involved an action to recover an amount due under a contract for the purchase of restaurant equipment. The contract provided that Erickson, the purchaser, would pay all expenses of a collection action. Erickson responded to Wohl's collection action with numerous af-

firmative defenses and a counterclaim. Wohl prevailed on its claim and on Erickson's counterclaim. The Court allowed Wohl to recover an attorney's fee for defending the counterclaim, finding the defense "part and parcel of the original action" because Wohl had to prevail on the counterclaim in order to prevail in its original action. *Erickson* at 1086.

In the case at bar, Defendants' counterclaims were identical to its affirmative defenses. Therefor, the counterclaims were part and parcel of the original action. The Court finds that the time spent by the Firm defending these claims is compensable.

### E. Calculation of Lodestar

The next step in the determination of a reasonable attorney's fee is the calculation of the lodestar amount. This is accomplished by multiplying the reasonable hourly rate times the number of hours reasonably expended. *Tufaro v. Willie*, 756 F.Supp. 556, 562 (S.D.Fla.1991).

For the period of May 16, 1986 through December 31, 1989, based upon the findings above, the lodestar is:

| Person Billing | Hourly Rate | Number of Hours | Lodestar |
|---|---|---|---|
| Terrance E. Schmidt | $165/hr. | 11.20 | $ 1,848.00 |
| Adam G. Adams, III | $165/hr. | 470.00 | 77,550.00 |
| Harold S. Lippes | $165/hr. | 65.40 | 10,791.00 |
| Stephen K. Moonly | $115/hr. | 1.00 | 115.00 |
| Cheryl A. Roberson | $ 90/hr. | 26.70 | 2,403.00 |
| Jennifer G. Bailey | $ 50/hr. | 38.40 | 1,920.00 |
| Summet Kaul | $ 50/hr. | 17.30 | 865.00 |
| **Total** | | | **$95,492.00** |

For the period of January 1, 1990 through August 31, 1991, based upon the findings above, the lodestar is:

| Person Billing | Hourly Rate | Number of Hours | Lodestar |
|---|---|---|---|
| Terrance E. Scmidt | $165/hr. | 7.90 | $ 1,303.50 |
| Adam G. Adams, III | $165/hr. | 87.40 | 14,421.00 |
| Harold S. Lippes | $165/hr. | .30 | 49.00 |
| Julie Hills Tucker | $115/hr. | 256.70 | 29,520.50 |
| Stephen K. Moonly | $115/hr. | 16.50 | 1,897.50 |
| Cheryl A. Roberson | $ 90/hr. | 2.80 | 252.00 |
| Jennifer G. Bailey | $ 50/hr. | 68.20 | 4,410.00 |
| Lynn M. Shackow | $ 50/hr. | 1.00 | 50.00 |

| Person Billing | Hourly Rate | Number of Hours | Lodestar |
|---|---|---|---|
| Courtney K. Grimm | $ 50/hr. | 10.50 | 525.00 |
| Summet Kaul | $ 50/hr. | 4.20 | 210.00 |
| Total | | | $51,639.00 |

Adding the two lodestar totals of $95,492 and $51,639 results in a total lodestar amount of $147,131.

### F. Adjustments of Lodestar

■ The final step in determining a reasonable attorney's fee is to make adjustments to the lodestar amount. The result in this case was not exceptional so an enhancement on this basis is not warranted. *Norman*, 836 F.2d at 1302. RTC prevailed on all four counts of its Supplemental Complaint. Any reduction of the lodestar amount on the basis of partial or limited success is also not warranted. *Id.* Finally, an enhancement for delay in payment has already been calculated into the reasonable hourly rate factor of the lodestar formula. No further enhancement on this basis is necessary.

The final question of adjustment involves Defendants' claim that the lodestar amount needs to be reduced because the fees generated in the litigation are out of proportion with the results obtained (Final Judgment of $50,741.22).

Defendants first cite a passage from *Norman* to support this argument.[4] Isolated from the rest of the opinion, this passage seems to support Defendants, however, in the context of the Court's discussion in *Norman*, this passage does not support Defendants' argument.

The Court's discussion prior and subsequent to the quoted sentence concerns reducing the lodestar on the basis of partial or limited success. "Limited relief," as stated by the Court, refers to partial or limited success in terms of the number of successful claims to unsuccessful claims,

not the dollar amount of a plaintiff's recovery where the plaintiff was 100% successful on its claims.[5] The quoted sentence does not stand for the proposition that the lodestar should be reduced when a fee request is out of proportion with the recovery in a case where a plaintiff has prevailed on all of its claims.

Defendants next rely on Texas case law to support their argument that the lodestar amount must be reduced. In *Texas Commerce Bank, N.A. v. Capital Bancshares, Inc.*, 907 F.2d 1571 (5th Cir.1991), the Court affirmed an award of attorney's fees of $62,846 where Plaintiff requested an award of $140,570.74. The case involved a $1.5 million note. The Court recognized that Texas law requires "fees must be reasonable under the particular circumstances of the case and must have some reasonable relationship to the amount in controversy or the complexity of the issues to be determined." *Id.* at 1575. The Court affirmed the award of fees because the action was a simple note collection suit which endured for little more than a year.

■ In their memorandum, Defendants failed to include the above quoted language, "or the complexity of the issues to be determine," indicating that the amount in controversy should be the Court's only consideration. This is not the case. The amount in controversy is just one factor to consider.

■ The twenty affirmative defenses and three counterclaims raised by Defendants escalated the complexity of this case

4. "A reduction (of the lodestar) is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Norman* at 1302.

5. The *Norman* Court relied on *Hensley* for support at this point in its discussion. A review of

*Hensley* reveals that the *Hensley* Court was also discussing partial or limited success in terms of plaintiff's successful claims versus plaintiff's unsuccessful claims, and not in terms of a small recovery in a case where plaintiff prevailed on all of its claims. *See Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941–42.

and required the Firm to expend more time than it would have in a run of the mill mortgage foreclosure action. While Defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance, increase the exertions required by their opponents and thus, if unsuccessful, be required to bear that cost. *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir.1981). Given the circumstances of this case, in addition to the amount in controversy and the complexity of the issues, the lodestar amount is reasonable and does not require a reduction based upon *Texas Commerce.*

█ Finally, Defendants turn to the intentions of the parties to support a reduction of the lodestar amount. According to Defendants, the parties never intended that Defendants would be required to pay more than the face amount of the notes to compensate RTC for its legal expenses. Defendants rely on *M/A-COM Security Corp. v. Galesi*, 752 F.Supp. 176 (S.D.N.Y.1990). In *Galesi*, the $20,000 at issue was a premium paid by Plaintiff to its counsel for "the result obtained relative to the time expended." *Id.* at 177. The premium was not within the intentions of the parties and was not recoverable as a reasonable attorney's fee.

At issue in the case at bar is a claim for fees incurred by RTC in its collection of the two promissory notes executed by Hallmark and guaranteed by Nutt. RTC did not pay the Firm any premium or bonus and does not seek to recover any such bonus from the Defendants. RTC seeks only attorney's fees incurred in the foreclosure action, the fees which were within the intentions of the parties at the time the notes were executed.

Notwithstanding these flaws in Defendants' arguments, there remains an overall question of reasonableness of the fees requested. Rule 4–1.5, Rules Regulating the Florida Bar, provides that a factor in determining a reasonable fee is the "significance of, or amount involved in, the subject matter of the representation...." RTC, in agreeing to the alternative fee arrangement, was concerned about the overall cost of litigation and limited its own exposure to 25% of the recovery. The Firm was willing

to continue the litigation knowing its fee might be limited to the percentage award. An attorney billing her own client for work necessarily employs "billing judgment" as an important component in setting a fee. "Hours that are not properly billed to one's *client* also are not properly billed to one's adversary ..." *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (en banc) (emphasis in original) (quoted in *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940).

Applying "billing judgment" to the circumstances of this case, the Court finds that the lodestar amount for the period prior to January 1, 1990 (when no positive results were obtained) should be reduced by 50% and that fees for the period beginning January 1, 1990 should be limited to the highest amount RTC itself was willing to pay (*i.e.,* 25 per cent of the recovery).

RTC should recover fees calculated as follows:

| | |
|---|---:|
| Lodestar for May 16, 1986 to December 31, 1989 | $95,492.00 |
| (reduced by 50%) | (47,746.00) |
| plus | |
| 25% of final judgment recovered | 12,685.30 |
| **Total** | **$60,431.30** |

Consistent with the Bar Rules, this calculation brings the final fee more in line with the significance of the amount in controversy.

## VI. CONCLUSION AND RECOMMENDATION

The Court finds that a reasonable attorney's fee in this action is $60,431.30. This Court respectfully recommends that the District Court enter an order awarding Plaintiff RTC a reasonable attorney's fee of $60,431.30.

Failure to file written objection to the proposed findings and recommendations contained in this report within ten (10) days of the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.